**366 A.2d 1144.**

MICHAEL O. MASSEY *vs.* JAMES W. MULLEN.

DECEMBER 3, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris,, JJ.

PAOLINO, J. This is a petition for a writ of habeas corpus to admit the petitioner to bail pending trial.

On December 25, 1974, petitioner was arrested for the murder of Robert Eastland, alias Marion Jones. He made a written confession the same evening. At a hearing held to determine whether he should be released pending trial, the hearing judge, relying primarily on the confession, stated "the proof of guilt is clear" and determined that petitioner could be denied bail consistently with art. I, §9 of the Rhode Island Constitution.[1] The petitioner then brought a petition for a writ of habeas corpus before this court, arguing that the confession was obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that such a confession could not be relied upon to deny petitioner bail. We remanded the matter to the Superior Court for a determination of whether the taking of the confession conformed with the *Miranda* guidelines. *Massey* v. *Mullen*, 115 R.I. 908, 341 A.2d 61 (1975). A hearing was held on August 4 through August 7, 1975, wherein the hearing judge found that the *Miranda*

---

[1]Rhode Island Const., art. I, §9 provides in relevant part:
"All persons imprisoned ought to be bailed by sufficient surety, unless for offences punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great."

standards were in fact violated. We must now determine whether such a confession may be relied upon in determining that the "proof of guilt is evident or the presumption great" and whether defendant is thus not entitled to bail as a matter of right.[2] For the reasons that follow, we hold that the denial of bail cannot be based on such a confession.

While this petition was still pending, petitioner was tried and convicted and is now free on bail pending the appeal of said conviction. At oral argument we denied a motion to dismiss the petition, for while it is technically moot, we believe it presents a recurring question that is otherwise capable of evading review. *Westerly School Comm.* v. *Westerly Teachers Ass'n,* 111 R.I. 96, 98, 299 A.2d 441, 443 (1973).

There are relatively few cases which have addressed the question of whether a confession obtained in violation of *Miranda* may be used to satisfy the state's burden of proof at a bail hearing. Two courts have expressly stated that such a confession may not be relied upon,[3] because only evidence normally admissible at trial can be used for that purpose. *Steigler* v. *Superior Court,* 252 A.2d 300 (Del. 1969); *State* v. *Tucker,* 101 N.J. Super. 380, 244 A.2d 353 (1968). Neither decision turned upon this issue, however, because in each case the court determined there was at least *prima facie* evidence that the confession satisfied the

---

[2]We expressly reserve the question of whether a confession obtained in violation of *Miranda* may be used in determining the amount at which bail should be set once it is determined that an accused should be granted bail, or in determining whether an accused who has been released pending trial has violated the conditions of his release.

[3]The Supreme Court of Delaware noted that a decision to deny bail would not be overturned merely because the judge considered inadmissible evidence if there was also before him admissible evidence sufficient to satisfy the standard of proof. *Seigler v. Superior Court,* 252 A.2d 300, 305 (Del. 1969).

*Miranda* guidelines.[4] Furthermore, neither court explained why only admissible evidence could be used. A pre-*Miranda* decision from Texas also holds that an involuntary confession may not be used for this purpose. *Ex parte Prince,* 153 Tex. Crim. 569, 223 S.W.2d 241 (1949). However, this decision, like the others, contains no explanation or supporting authority, and is distinguishable in that an involuntary confession is more likely to be unreliable than one which violates *Miranda* without being involuntary in the traditional sense. We have found no cases which hold that an inadmissible confession may be used for this purpose.

We are not wholly persuaded by these decisions, due to their lack of explanation and supporting authority. However, we believe the logic of our decision in *Fountaine* v. *Mullen,* 117 R.I. 262, 366 A.2d 1138 (1976), compels us to adopt the same rule. There we stated that the words "the proof of guilt is evident or the presumption great" mean evidence which when considered in the light most favorable to the state is legally sufficient to support a verdict of guilty. This test looks forward to the trial stage rather than backward toward the arrest.[5] The New Jersey

---

[4]In *Tucker,* the court stated that under New Jersey law, a bail hearing was preliminary in nature and not a proper time for a full hearing on the admissibility of evidence. Consequently, a confession could be admitted and relied upon at the bail hearing following a mere *prima facie* showing that the *Miranda* rules had been followed. *State v. Tucker,* 101 N.J. Super. 380, 383, 244 A.2d 353, 355 (1968).

[5]One study has noted the existence in the various states of two distinct models of the preliminary hearing: the backward-looking model and the forward-looking model. The author contrasts the two models in the following manner:

"The backward-looking model stresses the preliminary and nonfinal nature of the hearing and places emphasis upon the fact that the proceeding is not a trial but is only an initial screening mechanism occurring very shortly after the accused has been arrested. The focus of the inquiry would be upon the factual, as contrasted to the legal, guilt or innocence of the accused, just as it is when a

courts apply virtually the same standard of proof that we adopted in *Fountaine. State* v. *Obstein*, 52 N.J. 516, 523-24, 247 A.2d 5, 9 (1968). The Supreme Court of Delaware has stated that bail may be denied only if there is a "fair likelihood" of conviction at trial. *In re Steigler*, 250 A.2d 379, 383 (Del. 1969). Although the court did not define "fair likelihood," it is clear that the test is forward looking in the same sense as *Fountaine* and *Obstein*.

The respondent does not attempt to distinguish the authorities nor answer the argument noted above. Rather, he asks us to draw an analogy between a bail hearing and other proceedings in which illegally obtained evidence may be relied upon.

The respondent first compares bail hearings with hear-

---

magistrate is considering whether there is 'probable cause' to issue an arrest warrant.

"Hearsay and other evidence which would be incompetent at trial, as well as illegally obtained evidence, would be admissible at the preliminary examination.

\* \* \*

"The primary concern of [the forward-looking] model is whether there is a sufficient probability of conviction at trial to warrant further proceedings and those cases for which such a probability does not exist are screened out; the perspective is forward, toward trial, rather than backward, toward the arrest. The focus of this hearing is upon the probability of the legal, rather than factual, guilt or innocence of the accused whose interest in avoiding further unnecessary proceedings are thus protected.

"Since under this model the perspective is toward trial and the primary concern is with the legal guilt or innocence, trial-type standards would generally be imposed; this type of hearing would thus be more judicial than the backward-looking model. \* \* \* [I]llegally obtained evidence would be excluded. The prosecution would be required to introduce evidence (either direct or circumstantial) which would be legally sufficient to avoid a directed acquittal at trial: evidence of every element of the offense charged which is sufficiently credible and persuasive that the jury would be allowed to convict upon such evidence."

Note, *The Function of the Preliminary Hearing in Federal Pretrial Procedure*, 83 Yale L.J. 771, 776-77, 779-80 (1974) (footnotes omitted).

ings to determine whether an offender has violated the terms of a deferred sentence agreement or whether parole should be revoked. The respondent notes that, in the latter instances, a confession obtained in violation of *Miranda* or the fruits of an illegal search may be relied upon, *In re Martinez,* 1 Cal.3d 641, 463 P.2d 734, 83 Cal. Rptr. 382 (1970) (confession and search); *United States ex rel. Sperling* v. *Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970) (search); *Von Pickrell* v. *People,* 163 Colo. 591, 431 P.2d 1003 (1967) (search), and contends that imposition of a deferred sentence or revocation of parole deprives a person of liberty just as much as denial of bail. He also notes that we stated in *State* v. *Skirvin,* 113 R.I. 443, 322 A.2d 297 (1974), that the standard of proof to be applied at a bail hearing is virtually identical to that applied at a violation hearing. Therefore, he concludes, an illegally obtained confession should be equally admissible at a bail hearing.

We find this argument unpersuasive. First of all, it is based upon a misunderstanding of our holding in *Skirvin.* The defendant in that case had been arrested for murder while he was under a deferred sentence agreement. A hearing was held at which the judge determined that there was sufficient evidence to warrant denial of bail. The judge then stated that Skirvin *ipso facto* had also violated the deferred sentence agreement, since the standard of proof for finding a violation was, for all intents and purposes, synonymous with the standard for denying bail. This court affirmed the imposition of the deferred sentence.

We believe *Skirvin* means only that the relevant standards of proof for a bail hearing and a violation hearing are similar, and that application of the bail standard to a violation determination is not necessarily reversible error. We noted that "[t]here was abundant evidence to deny bail and at the same time require the imposition of the sentence originally deferred in 1968." *State* v. *Skirvin,*

*supra* at 448, 322 A.2d at 300-01. Furthermore, while this court stated in *Skirvin* that the standard of proof at a bail hearing was, for all intents and purposes, the same as that at a violation hearing, it also noted that evidence admissible at the violation hearing was not necessarily admissible at a bail hearing.

> "We would also point out that there was nothing informal in the manner in which the bail hearing was conducted. The rules of evidence were scrupulously observed. This would not necessarily be true if a separate violation hearing had been held." *State* v. *Skirvin, supra* at 448, 322 A.2d at 300.

Secondly, respondent's argument fails to recognize the special nature of a parole revocation or violation hearing which has been characterized by the United States Supreme Court as follows:

> "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Cf. *Mempa* v. *Rhay,* 389 U.S. 128 (1967). Parole arises after the end of the criminal prosecution, including imposition of sentence. * * * Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey* v. *Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

In permitting an exception to the exclusionary rule, several courts have placed heavy reliance on the fact that the subject of such a hearing has already been convicted and that the hearing relates only to the disposition of the offender. It has been held that the deterrent effect that the exclusionary rule has upon law enforcement officials is far outweighed by the risk to the public which inheres in allowing convicted criminals to return to or remain in society as parolees. It is this balance of considerations which has

been held to warrant an exception to the exclusionary rule in parole revocation proceedings. *In re Martinez, supra* at 649, 463 P.2d at 740, 83 Cal. Rptr. at 388. *Accord, United States ex rel. Sperling* v. *Fitzpatrick, supra* at 1163-64. We do not believe this exception should be expanded to apply to proceedings in which the state attempts to have an accused held without bail prior to a determination of guilt.

The respondent next compares a bail hearing with a probable cause hearing. General Laws 1956 (1969 Reenactment) §12-12-1.9, as enacted by P.L. 1974, ch. 118, §11, clearly provides that inadmissible evidence may be used at a probable cause hearing:

> "A finding of the existence of probable cause may be based in whole or in part upon hearsay evidence or on evidence which may ultimately be ruled to be inadmissible at the trial."

There are important differences, however, between the procedure established by this statute and the requirements for a bail hearing established by art. I, §9. First, we believe the probable cause hearing conforms with the backward-looking model, described previously,[6] while the bail hearing fits the forward-looking model. Section 12-12-1.9 directs the judge to determine whether there is reason to believe the accused has committed an offense; a question regarding the *factual* as opposed to the *legal* guilt or innocence of the accused. At a bail hearing, on the other hand, the judge must look ahead to the trial and determine whether the accused could lawfully be convicted. As we noted earlier, the backward-looking test is generally less strict and permits reliance on inadmissible evidence while the forward-looking test does not.

Even more important than the conceptual distinction just described, we believe the probable cause hearing and the bail hearing were intended to perform entirely different

---

[6]Note 5, *supra*.

functions and provide different levels of safeguards. The Legislature's official explanation of §12-12-1.9 indicates that the probable cause hearing was intended to be only a preliminary screening device and require only a minimal showing by the state. That explanation reads in part as follows:

> "In essence, the state is entitled to the benefit of every reasonable inference in [the probable cause] proceeding, which is intended only as a preliminary screening device and not to resolve ultimate questions of guilt or innocence. For that reason, the usual rules of evidence are not applicable at this stage of the proceeding and the state is entitled to rely on hearsay evidence as well as evidence which ultimately may prove not to be admissible at the trial, even if it is claimed such evidence was acquired by unlawful means." Explanation of ch. 118, P.L. 1974, ch. 118 at 702.

We believe art. I, §9 requires substantially more than this minimal, preliminary showing before an accused may be denied bail pending trial. As we noted in *Fountaine* v. *Mullen, supra,* to interpret the words "when the proof of guilt is evident or the presumption great" as signifying no more than probable cause would render art. I, §9 meaningless, since in no event may an accused be lawfully imprisoned without a preliminary showing of probable cause. *Id.* at 117 R.I. 266-67, 366 A.2d at 1147. The substance of the additional safeguard established in *Fountaine* is that the state must meet a higher standard of proof. Specifically, the state must make out a case that demonstrates not only a factual probability of guilt but it must produce evidence that is legally sufficient to support a conviction. *Id.* at 268, 366 A.2d at 1147-48.

The confession admitted in the case at bar was found to be constitutionally infirm. For the reasons stated we hold that the denial of bail within the strictures of art. I, §9 cannot be based on constitutionally infirm evidence.

The state offered virtually no evidence at the bail hearing other than the illegally obtained confession. It was error for the hearing judge to deny bail upon this evidence alone. We need not actually issue a writ of habeas corpus, however, since the case is technically moot.

*William F. Reilly*, Public Defender, *Allegra E. Munson*, Asst. Public Defender, for petitioner.

*Julius C. Michaelson*, Attorney General, *Judith Romney Wegner*, Special Asst. Attorney General, for respondent.