366 A.2d 1138.

EUGENE S. FOUNTAINE *vs.* JAMES W. MULLEN.
DENNIS SOUZA *vs.* JAMES W. MULLEN.

DECEMBER 3, 1976.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. We consolidated for oral argument four petitions for writs of habeas corpus because they presented related and recurring questions regarding admission to bail pending trial for serious crimes. Two petitions are treated together in this decision because they arise out of the same occurrence and present common questions of law. The two additional cases, *Massey* v. *Mullen,* 117 R.I. 272, 366 A.2d 1144 (1976), and *DiMasi* v. *Mullen,* 117 R.I. 281, 366 A.2d 1149 (1976), are treated in separate opinions immediately following this decision.

The petitioners here were arrested in connection with the slaying of John J. Roderick, Jr. on September 17, 1975. After arraignment and prior to indictment, petitioners were afforded a hearing before a justice of the Superior Court to determine whether they should be admitted to bail pending trial. He held that the prosecution had offered sufficient evidence that petitioners were guilty of first degree murder to permit them to be held without bail consistent with R.I. Const., art. I, §9 and denied bail without further consideration.

## I

Article I, §9[1] fixes two requirements that must be met before an accused may be denied bail pending trial. The first is that the accused be charged with an offense "punishable by death or by imprisonment for life." The petitioners' first argument is that the hearing judge erred in determining that petitioners could be properly charged with such a crime.

The hearing judge found that there was evidence that Fountaine and Souza were part of a conspiracy to inflict serious bodily injury upon Roderick, and that the killing was perpetrated in furtherance of that conspiracy. Thus, he concluded, the petitioners might be found liable for first degree murder under the felony-murder rule. The petitioners argue that such a conspiracy is not one of the felonies enumerated in the definition of first degree murder in G.L. 1956 (1969 Reenactment) §11-23-1. This error is important, petitioners continue, because art. I, §9 permits the denial of bail only when defendant is charged with a crime which carries a *mandatory* life sentence. Since only first degree murder carries such a sentence, and since peti-

---

[1]Rhode Island Const., art I, §9 provides in relevant part:

"All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great."

tioners could not be properly convicted of first degree murder, the argument concludes, petitioners should have been granted bail.

The petitioners argue further that the weight of authority supports the general principle that the hearing judge must determine the sentence that is likely to be imposed. *E.g., Ex parte Paul,* 420 S.W.2d 956 (Tex. Crim. App. 1967). The petitioners contend that in this case they are not likely to be sentenced to life if convicted and that, for this reason, they should have been admitted to bail. We find this argument unpersuasive also. The cases relied upon by petitioners dealt with constitutional provisions which permitted denial of bail in "capital" cases. *E.g.,* Tex. Const., art. 1, §11. Particularly in light of recent declarations that the death penalty is unconstitutional, the term "capital" is highly ambiguous. *See People ex rel. Dunbar* v. *District Court,* 179 Colo. 304, 500 P.2d 358 (1972). In contrast, the language in our own constitution, to wit, "offences punishable by death or by imprisonment for life" is unambiguous. It clearly refers to *possible* punishment. We, therefore, have no difficulty in holding that bail may be denied in cases where death or life imprisonment could possibly be imposed as penalties for the crime committed.

The petitioners concede that a killing in the furtherance of a conspiracy to inflict serious bodily harm could constitute second degree murder. Since that is an offense for which a sentence of life imprisonment may be imposed,[2] we believe the first requirement for the denial of bail had been satisfied.

## II

In addition to restricting the offenses for which bail may be denied, art. I, §9 also requires the prosecution to demonstrate that "the proof of guilt is evident or the presump-

---

[2]General Laws 1956 (1969 Reenactment) §11-23-2 (Supp. 1975).

tion great" with respect to such a crime. We have previously held that the burden of proof is upon the state to make such a showing and that the mere fact of indictment does not satisfy that burden. *Taglianetti* v. *Fontaine,* 105 R.I. 596, 600, 253 A.2d 609, 611-12 (1969). Here petitioners claim that the hearing judge misconceived the quantum of additional proof that is required to satisfy this language.

Approximately forty states have constitutional provisions similar to art. I, §9. The courts in these states that have addressed the question of quantum of proof have split five different ways.

(1) A substantial bloc of state courts have adopted a rule which provides that the hearing judge shall not make any determination of guilt, but shall merely determine whether the evidence, viewed in the light most favorable to the state, is legally sufficient to sustain a verdict of guilty.

> "* * * the narrow and focal issue must be kept in mind by the trial court and the hearing tailored to that issue, *i.e.,* whether the facts adduced by the State notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a [guilty] verdict * * *."
> *State* v. *Obstein,* 52 N.J. 516, 523-24, 247 A.2d 5, 9 (1968).[3]

---

[3]*Accord, In re Troia,* 64 Cal. 152, 28 P. 231 (1883); *Gladney* v. *District Ct.,* Colo., 535 P.2d 190 (1975); *Ex parte Simpson,* 37 N.M. 453, 24 P.2d 291 (1933); *State v. Teeter,* 65 Nev. 584, 200 P.2d 657 (1948); *State v. Smith,* 24 Ohio Dec. 456, 16 Ohio N.P. (n.s.) 385 (C.P. 1914) (standard for admitting to bail after mistrial and discharge of jury, same as that on a motion for a new trial, *i.e.,* could guilty verdict be sustained in view of *all* the evidence?); *Commonwealth ex rel. Alberti v. Boyle,* 412 Pa. 398, 195 A.2d 97 (1963); *Meldrum v. Campbell,* 20 Wyo. 87, 121 P. 26 (1912); *see State v. Menillo,* 159 Conn. 264, 268 A.2d 667 (1970) (indictment alone cannot be basis for denial of bail); *Bates v. Hawkins,* 52 Haw. 463, 478 P.2d 840 (1970) (same); *State ex rel. Connall v. Roth,* 258 Ore. 428, 482 P.2d 740 (1971) (same).

(2) In two states, the test is whether the evidence introduced at the bail hearing demonstrates guilt beyond a reasonable doubt.[4] In addition, the Florida Supreme Court has stated somewhat cryptically that "* * * proof that guilt is evident or the presumption of guilt is great is actually a greater degree of proof than that which is required to establish guilt merely to the exclusion of a reasonable doubt." *State ex rel. Van Eeghen* v. *Williams*, 87 So.2d 45, 46 (Fla. 1956).

(3) Three states require the judge to predict whether a dispassionate jury would likely convict after hearing the evidence produced at the bail hearing. The root question under this standard is whether the evidence is clear and strong, and leads to a well-guarded and dispassionate judgment that the accused is guilty and probably would be punished capitally.[5]

(4) At least one state requires the hearing judge to evaluate and weigh the evidence himself and determine whether it "tends strongly to show guilt."[6]

(5) In one state, the phrase "proof is evident or the presumption great" is equated with probable cause.[7]

Among these several views we believe the first mentioned to be the soundest. First we think it clear from the language itself that "proof is evident or the presumption great" means something more than probable cause for if it were to be read in such a manner, the guarantee would add

---

[4] *Nickell* v. *Kelly*, 357 S.W.2d 856 (Ky. Ct. App. 1962); *Huff* v. *Edwards*, 241 So.2d 654 (Miss. 1970).

[5] *Lee* v. *State*, 281 Ala. 631, 206 So.2d 875 (1968); *Ford* v. *Dilley*, 174 Iowa 243, 156 N.W. 513 (1916); *Ex parte Paul*, 420 S.W.2d 956 (Tex. Crim. App. 1967).

[6] *Ex parte Verden*, 291 Mo. 552, 237 S.W. 734 (1922).

[7] *Hafenstein* v. *Burr*, 92 Ariz. 321, 376 P.2d 782 (1962); *see* Arizona Const., art. 2, §22.

nothing to the accused's rights, since a suspect may not be held without a showing of probable cause in any instance. Second, "[w]e think it apparent that, on a habeas hearing for release on bail, the state need not prove the accused's guilt beyond a reasonable doubt. That degree of proof is reserved for trial and is not what the writers of our constitution had in mind in providing for bail." *In re Application of Wheeler,* 81 Nev. 495, 500, 406 P.2d 713, 716 (1965). Not only is it highly improbable that the framers intended the bail hearing to determine the precise question to be answered at the trial itself, but such duplication obviously wastes judicial resources and might prejudice a defendant's opportunity for a fair trial. If it becomes common practice to deny bail only after a judge has determined that the evidence produced at the bail hearing demonstrates guilt beyond a reasonable doubt, and the jury learns that a defendant has been denied bail, they may be highly predisposed to convict. *See e.g., State* v. *Konigsberg,* 33 N.J. 367, 377-78, 164 A.2d 740, 745-46 (1960).

For similar reasons, we believe the New Jersey rule is preferable to those tests which call upon the hearing judge to determine whether the evidence "tends strongly to show guilt" or whether a dispassionate jury would likely convict. Each of these tests also requires the judge to express some belief as to the defendant's actual guilt.

The petitioners argue that we should adopt the Florida rule — proof greater than beyond a reasonable doubt — because the Florida constitutional provision is the only one that is truly analogous to our own. The petitioners note that the Florida provision, like R.I. Const., art. I, §9, permits denial of bail for offenses punishable by death or life imprisonment, while most of the other states permit denial

of bail only for capital crimes.[8] Fla. Const. art. I, §14. They also argue that it is fundamentally unfair to apply the more lenient New Jersey rule on the standard of proof, because the Rhode Island provision permits denial of bail for much less serious offenses than do the jurisdictions from which the New Jersey rule is borrowed.

This argument is unpersuasive. First, there is no connection between the scope of the exception in the Florida provision and the standard of proof adopted by the Florida Supreme Court. The Florida constitution was amended in 1968 to permit denial of bail for offenses punishable by life, Fla. Const. art. I, §14, while the strict standard of proof was adopted as early as 1916. *Russell* v. *State*, 71 Fla. 236, 71 So. 27 (1916). Nor do we perceive any unfairness in applying the New Jersey rule to the Rhode Island provision. We hold *infra* that even when the state demonstrates that an accused comes under the exception in art. I, §9, this merely means that he is not entitled to be bailed as a matter of right and that he still may be released as a matter of discretion.

We hold, therefore, that at a pre-trial bail hearing the hearing judge shall determine whether the facts adduced by the state, viewed in the light most favorable to the state (*i.e.*, notwithstanding contradiction of them by defense proof), are legally sufficient to sustain a verdict of guilty.

We think it is quite clear that the hearing judge in the case at bar followed the standard we have adopted here.

---

[8]The South Carolina provision also permits denial of bail for offenses punishable by life imprisonment. S.C. Const. art. I, §15 (Supp. 1975). There are, as yet, no cases arising under this provision addressing the burden of proof required. In 1970, the Arizona provision was amended to permit denial of bail for any felony committed while the accused is out on bail on a previous felony charge, as well as for capital offenses. Ariz. Const. art 2, §22. Michigan and Nebraska permit denial of bail only for murder and treason. Mich. Const. art. I, §15; Neb. Const. art. I, §9.

"The evidence before me, if that was the only evidence that came in before a jury, and the coroner's report, I think would justify a jury of convicting these people of first degree murder * * *."

We must also determine whether he applied that test. In accordance with the virtually universal rule, we will refrain from characterizing the evidence against the accused, in order to avoid influencing the trial in any manner. *E.g., State* v. *Smith,* 24 Ohio Dec. 456, 464, 16 Ohio N.P. (n.s.) 385, 393 (C.P. 1914). We have carefully reviewed the transcript, however, and it is our conclusion that the hearing judge was not clearly wrong in finding that the state had supplied the necessary quantum of proof with respect to both petitioners.

### III

The petitioners' third argument is that, even if the hearing judge determines that "the proof of guilt is evident or the presumption great" of a crime punishable by life imprisonment, denial of bail is not mandatory, but rather the hearing judge may determine whether defendant should be granted bail as a matter of discretion. We agree.

The courts that have addressed this question have reached varying conclusions thereon. An Arizona appellate court interpreting a slightly different constitutional provision[9] has squarely held that denial is mandatory in all situations where the proof of guilt is evident or the presumption is great. To interpret the provision otherwise, the Arizona court held, would subvert the clear intent of the provision to keep repeated offenders and dangerous felons off the streets. *State* v. *Garrett,* 16 Ariz. App. 427, 429, 493 P.2d 1232, 1234 (1972). Two other courts have expressly stated that denial of bail is mandatory, but the statements were *dicta* and without explanation or supporting authority. *State ex rel. Murray* v. *District Court,* 35 Mont. 504,

---

[9]*See* note 8, *supra.*

508, 90 P. 513, 514 (1907); *State* v. *Woolard,* 22 Ohio Dec. 652, 654 (C.P. 1910). Other decisions contain language to the effect that once the requisite proof is shown, a defendant is "not entitled" to bail, thus at least intimating that denial is mandatory. *Allen* v. *State,* 174 So.2d 538, 540 (Fla. 1965); *Brooks* v. *Gaw,* 346 S.W.2d 543 (Ky. 1961).

On the other hand, at least two courts have directly held that bail may be granted as a matter of discretion in circumstances similar to those presented by the case at bar.

> "At common law a person accused or indicted of any felony whatsoever was bailable in the discretion of the court, upon good sureties, until he was convicted. *In re Comalli,* 78 Vt. 337, 63 Atl. 184. It should seem from the foregoing that even where the offence charged by indictment is a capital one, and the proof evident or presumption great, the prisoner may be admitted to bail in the discretion of the court having jurisdiction of the question; but in this connection it should be stated that the discretion to be exercised by a court of justice is not an arbitrary, but a sound, judicial discretion, controlled by certain and well defined and established rules." *In re Dexter,* 93 Vt. 304, 315, 107 A. 134, 138 (1919); *accord, State* v. *Hartzell,* 13 N.D. 356, 357, 100 N.W. 745, 746 (1904).

We believe the view that bail may be granted as a matter of discretion is far more persuasive. First, we note the historical background of bail provisions of this type.

> "At common law in England and in this country * * * the grant of bail in all cases rested in the discretion of the courts. (Citations omitted.) The authority to do so seems to have been considered inherent. (Citations omitted.) Probably because judges exercised their discretion adversely to the accused so frequently (Citations omitted.), the people of various states of the Union began to include liberal provisions relating to bail in their constitutions." *State* v. *Konigsberg, supra* at 370-71, 164 A.2d at 742; *see Com-*

*monwealth* v. *Baker,* 343 Mass. 162, 165-68, 177 N.E.
2d 783, 784-86 (1961).[10]

As a part of the Declaration of Rights in the Rhode Island
Constitution, we believe art. I, §9 was intended to expand
the bail rights enjoyed by defendants at common law. We
believe it would be highly dubious to treat a provision
that was enacted as a guarantee of rights in such a way
as to retract rights previously enjoyed by defendants, ab-
sent clear evidence that the framers intended that result.

The petitioners should be afforded a hearing to deter-
mine whether they should be released pending trial as a
matter of discretion. Although the question of proper
standards for the exercise of this discretion was not fully
argued before this court, we believe it is appropriate to
attempt to state some guidelines for the benefit of the
judges who must consider these cases upon remand. For
general reference, therefore, we refer these judges to the
relevant standards set forth by this court in *State* v. *Ab-
bott,* 113 R.I. 430, 432-33, 322 A.2d 33, 35 (1974), regard-
ing post-conviction release.[11] We do not mean, however, to
preclude a party from arguing in some future case before
this court that any of these standards are unwise or un-
workable.

---

[10]Our own cursory examination of the records of cases heard by this
court in the years shortly following the adoption of this state's con-
stitution in 1842, indicates that defendants charged with offenses which
were at that time punishable by death or imprisonment for life were
admitted to bail. Thus, it could be inferred that the framers of R.I.
Const., art. I, §9 intended that a bail hearing judge would retain the
inherent power to grant bail as a matter of discretion even in cases
where the defendant could be sentenced to death or life imprisonment.
*E.g., State v. Rounds,* Supreme Court of R.I., trial session, Sept. 1842
(burglary with intent to "'feloniously ravish and carnally know by force
and against [the victim's] will"; pre-trial recognizance in the amount
of $5,000).

[11]ABA Project on Minimum Standards for Criminal Justice, *Standards
Relating to Pretrial Release,* §§5.1-5.3 at 17-20, §§5.5-5.9 at 20-21 (Ap-
proved Draft, 1968).

The petitions for habeas corpus are granted and the causes are remanded to the Superior Court for proceedings consistent with this opinion.

Mr. Chief Justice Bevilacqua did not participate in No. 75-290 M.P.

*Raymond J. Daniels*, for Eugene S. Fountaine.

*William J. Burke, William P. Butler,* for Dennis Souza, petitioner.

*Julius C. Michaelson*, Attorney General, *Judith Romney Wegner*, Special Asst. Attorney General, for respondent.