371 So.2d 96 (1978)
Danny W. ARTHUR, Petitioner,
v.
The Honorable Carl H. HARPER, As Judge of the Fifteenth Judicial Circuit of Florida, and Richard Wille, Sheriff of Palm Beach County, Respondents.
No. 78-1512.
District Court of Appeal of Florida, Fourth District.
October 6, 1978.
Rehearing Denied December 20, 1978.
*97 Stuart A. Young, West Palm Beach, for petitioner.
Robert L. Shevin, Atty. Gen., Tallahassee, and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for respondents.
ANSTEAD, Judge.
The petitioner, Danny W. Arthur, is seeking review of a trial court order denying pretrial bail.
Arthur was charged with several life felonies. Bail was denied. The trial court's denial was predicated in part upon the provisions of Article I, Section 14 of the Florida Constitution:
Until adjudged guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great. (Emphasis supplied)
Rule 3.130(a) of the Florida Rules of Criminal Procedure carries forward the provisions of Section 14 by providing in part:
[A]ll persons in custody for the commission of an offense unless it is a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great shall be entitled as of right to be admitted to bail before conviction. (Emphasis supplied)
At the bail hearing no evidence was submitted concerning the alleged offenses but Arthur requested and was permitted to present other testimony he considered relevant to the issue of bail. At the conclusion of the hearing the trial court issued a written order denying bail.
The first issue raised by Arthur is whether or not a trial court in a life felony case has any discretion to grant bail absent a showing that the proof of guilt is not evident and the presumption not great.
Clearly, under the provisions of the Constitution and the Rules of Criminal Procedure no right to bail is afforded to Arthur if the proof of his guilt is evident and the presumption great. Under current Florida law a defendant has the burden of demonstrating that the proof is not evident, etc. before he is entitled to bail as a matter of right. State ex rel. Loper v. Stack, 291 So.2d 207 (Fla. 4th DCA 1974).
Since Arthur presented no evidence as to whether the proof was evident, under Loper, supra, he was not entitled to bail as a matter of right. However, he contends that even if he could not demonstrate that the proof was not evident, etc., the trial court still had discretion to grant bail based upon a consideration of all the evidence presented as to whether Arthur would appear to answer the charges against him. In other words he concedes that he is not entitled to bail as a matter of right but contends that he is entitled to bail in the exercise of discretion by the trial court. To answer this question we must examine the history of Florida law relating to bail.
Under the common law bail was not a matter of right but was granted or denied in the discretion of the trial court:
[A]t common law, bail was granted or denied in the exercise of sound discretion, rather than as a matter of right and subject to established principles and precedents... . 4 Fla.Jur. Bail and Recognizance, § 13 (1969)
*98 In capital cases, at common law, bail was usually denied, on the theory that a defendant faced with the death penalty would flee, no matter what promises or security were offered to secure his presence at trial. 3 R.C.L., Bail and Recognizance, § 5, pages 7-8.
The notion that an accused had a right to bail was introduced when most of the states enacted constitutional provisions guaranteeing the right. However, the vast majority of these states, apparently carrying forward the common law practice, made an exception in the case of capital crimes where the proof of guilt was evident and the presumption great. Fountaine v. Mullen, 366 A.2d 1138 (R.I. 1976). In 1968 Florida added offenses punishable by life imprisonment to the exception. The exception itself, although enacted in virtually identical language in the various states, has been construed in two different ways. One line of cases has construed the exception to mean that once it is determined that the proof of guilt is evident, then a trial court must deny bail and has no discretion to grant bail regardless of any other circumstances. People v. District Court, 529 P.2d 1335 (Colo. 1974). A second line of cases has held that although an accused in a capital case no longer enjoys the right to bail when the proof of guilt is evident, the trial court still retains the discretion to grant bail based upon a consideration of all the circumstances in the case. Fountaine v. Mullen, supra.
Although the case law of this state strongly suggests a construction of the exception leaving the trial court without any discretion to grant bail in capital cases once it is determined that the proof of guilt is evident, we have not been cited and are unable to find a case that has decided this specific issue. Most of the Florida decisions considering the exception have had to do with the measure and burden of proof on the issue of whether the proof of guilt is evident. In Florida, the burden is on the accused to prove that the proof of guilt is not evident. State ex rel. Loper v. Stack, supra. But see James v. State, 241 So.2d 383 (Fla. 1970) and Primm v. State, 293 So.2d 725 (Fla. 2d DCA 1974). And the measure of proof in order to sustain a denial of the right to bail has been said to be greater than beyond a reasonable doubt. Russell v. State, 71 Fla. 236, 71 So. 27 (1916). Also see 4 Fla.Jur. Bail and Recognizance, §§ 14 and 15 (1969) and cases cited therein.
It is our conclusion, based upon the historical development of the right to bail and our perception of the intent of the authors of the constitution, that a trial judge retains discretion to grant bail, even in capital cases where the proof of guilt is evident. First, we note that the trial court had such discretion in capital cases at common law even though the discretion was rarely exercised in favor of the accused when the proof was evident. The constitutional provision, Section 14, Article I, is actually a grant of additional rights since no right to bail existed at common law. We cannot believe that it was intended, in a provision which grants additional rights, that another right be taken away, namely the right to have a trial court exercise discretion in deciding whether to grant bail. Rather, by granting a new right to bail in most cases, we believe it was intended to leave the court with discretion to deny bail in those cases not granted the right, namely capital crimes where the proof is evident. Indeed, the authority to deny bail is the distinguishing factor between bail as a matter of right and discretionary bail. When bail is a matter of right a court must grant bail, although the terms thereof are discretionary. But when bail is discretionary a court may deny bail. It is our conclusion that it is this authority to deny bail that the authors of the constitution intended to leave in the trial court in capital cases when the proof of guilt is evident. Just as at common law, where there was no right to bail, the trial court was left with discretion to decide the issue upon a consideration of all of the circumstances. In this regard we agree with the Supreme Court of Rhode Island which reached the same conclusion and stated:
As a part of the Declaration of Rights in the Rhode Island Constitution, we believe *99 art. 1, § 9 was intended to expand the bail rights enjoyed by defendants at common law. We believe it would be highly dubious to treat a provision that was enacted as a guarantee of rights in such a way as to retract rights previously enjoyed by defendants, absent clear evidence that the framers intended that result. Fountaine v. Mullen, 366 A.2d 1138, 1144 (R.I. 1976).
Arthur also contends that a contrary interpretation of these bail provisions would result in the abridgement of his federal constitutional rights. In support of this contention he cites the case of Escandar v. Ferguson, 441 F. Supp. 53 (S.D.Fla. 1977) which held that Section 14, Article I, if interpreted in such a way as to leave the trial court with no discretion to grant bail in life felony cases where the proof is evident, would be violative of the equal protection and due process provisions of the federal constitution. The federal court further stated:
If the constitutional provision and rule of procedure are interpreted as giving the trial court discretion to grant bond in life felony cases where the proof of guilt is evident and the presumption thereof great, then they are constitutional. (Id. at 57)
In Escandar it was concluded that the accused's right to a presumption of innocence, right to prepare a defense and the right to be free of punishment before conviction would all be substantially abridged if no discretion was allowed. Addressing the issue of equal protection, the federal court pointed out that under current Florida practice bail could be denied an accused before trial, when he was presumed innocent, and yet bail could be granted a similar offender on appeal, after the presumption of innocence was gone. Hedden v. State, 275 So.2d 52 (Fla. 2d DCA 1973). It was further noted that an offender sentenced for multiple convictions of lesser offenses may actually serve more time in prison than an offender facing a life sentence and yet the potential multiple offender would be entitled to bail and the potential life termer not. Escandar concluded that the only valid purpose of the Florida constitutional provision was to secure the accused's appearance; and that purpose could be accomplished without interfering with the accused's constitutional rights, only by allowing a court to exercise discretion in granting bail based upon a consideration of all relevant evidence, not just proof of guilt. Our construction of the provisions of Section 14 is in accord with the holding in Escandar.
As a result of the ruling in Escandar we have closely examined the constitutional implications of the Florida bail procedure in capital cases. While we have previously recognized that the burden of proof is upon the accused to demonstrate that the proof of guilt is not evident we feel that such procedure may itself be subject to similar constitutional attacks as were made in Escandar. We also note that while the Florida Supreme Court has recognized that burden rather clearly in such decisions as Russell v. State, supra, other decisions seem to imply that the state has such burden. For instance in James v. State, supra, Justice Adkins, in speaking for the court, stated:
At a hearing on the question of right to bail, it was necessary that the State produce evidence indicating great presumption of guilt. In this case, the evidence produced was that of an eye-witness who had testified at preliminary hearing and had been subjected to cross and recross examination. (Id. at 383)
Also see Primm v. State, supra, and State v. Thursby, 184 So.2d 505 (Fla. 1st DCA 1961). In effect, for purposes of bail, the accused in a capital case is presumed guilty and must carry the burden of demonstrating that the proof of his guilt is not evident. Yet, it has been said that the measure of proof of guilt in such a situation must be greater than beyond a reasonable doubt. We can well understand the difficulty that faces a trial court in attempting to reconcile these two principles. Under our decision today the issue of whether the proof is evident will no longer be the sole issue determinative of whether bail may be granted, so the effect of placing the burden of proof on the accused as to this issue will be considerably lessened.
*100 Now we must determine whether the trial court's denial of bail to Arthur is in accordance with our conclusions. In the order denying bail the trial court, after noting that no evidence as to proof of guilt was offered, concluded:
Nevertheless, the Court heard sworn testimony from the defendant regarding relevant bail considerations and found that the defendant has no substantial ties to the community and is a substantial bail risk considering the number and gravity of the charges, potential sentences and the summary of the State's allegations which were not disputed. See State ex rel. Smith v. Untreiner, 246 So.2d 158 (1 DCA 1971).
Therefore, defendant's Motion to Set Bail is denied.
Our review of the record reveals that the court received all evidence sought to be presented by Arthur, and upon a consideration of that evidence and the gravity of the offense charged, denied bail. Neither Escandar or our decision stands for the proposition that a defendant has a right to bail in capital and life felony cases. Rather, the trial court has discretion, based upon the circumstances of each case, to grant or deny bail. The record before this court supports the trial court's conclusion that Arthur has no substantial ties to the community and would be a substantial bail risk. Based upon the record, including the gravity of the charges pending, we can find no abuse of discretion in the denial of bail under the totality of circumstances in this case.
While our ruling today appears to be the first to recognize the existence of discretionary authority in the trial court's determination of bail in capital and life felony cases, we do not anticipate a dramatic change in practice. By the provisions of Section 14, the framers of our Constitution did not intend to grant bail as a matter of right in capital and life felony cases where the proof is clear. By singling out such cases it is obvious that courts were being granted the authority to deny bail in those cases whereas that authority was withheld as to all other cases. Furthermore, while we are recognizing the existence of discretion in the trial courts, it is clear that bail should not be routinely granted in such cases, but rather a heavy burden should be placed upon the defendant to clearly demonstrate that he is entitled to bail despite the gravity of the offense and the nature of the punishment he faces. In this court's view there is still logic in the underlying premise of the original constitutional exception that one charged in a capital case and facing a possible death penalty, where the proof is clear, is more likely to flee than to submit himself for trial. And while that reasoning is not as strong in a life felony case it is still a valid and important factor to be considered in determining whether bail should be denied.
The order denying bail is approved and the petition for writ of habeas corpus is denied.
DOWNEY, C.J., and DAUKSCH, J., concur.

ON PETITION FOR REHEARING
PER CURIAM.
The respondents have filed a petition for rehearing and a motion for certification. The petition for rehearing is denied. However, the motion for certification is granted, and the following questions are hereby certified to the Florida Supreme Court as questions of great public interest passed upon by this court's decision of October 6, 1978:
1. Does a trial court have discretion to grant bail to a defendant who is charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident and the presumption great?
2. Does the accused or the state, in a capital case or a case involving life imprisonment where the accused is seeking to be admitted to bail, have the burden of proof on the issue of whether the proof of guilt is evident and the presumption great?
DOWNEY, C.J., and ANSTEAD, J., concur.
DAUKSCH, J., concurs in part and dissents in part with opinion.
*101 DAUKSCH, Judge, concurring in part and dissenting in part.
While I concur in the denial of the petition for rehearing I dissent in the decision to certify the matter to our Supreme Court. If there is a conflict between our decision and others, and respondent urges there is a conflict, then our Supreme Court can grant certiorari and resolve the conflict. Article V, Section 3, Florida Constitution. I hold the position that a question should be certified to our Supreme Court only when there is a great need for an early resolution of a problem which only our Supreme Court can resolve adequately. The matter here is of no greater public interest than many we decide and while I recognize some Federal District Courts have taken interest in the question we considered here, I still do not perceive such a great public interest to require our certifying the matter to our Supreme Court. The responsibility is ours and should be ours finally and unless a conflict truly exists the matter should come to a rest. Again, if a conflict exists, and our Supreme Court deems it necessary to resolve it, then that procedure is available under the same Constitutional provision cited above.