396 A.2d 97.

CHARLES C. BRIDGES *vs.* SUPERIOR COURT *et al.*

DECEMBER 29, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

102

KELLEHER, J. This opinion for habeas corpus is brought by one whose recognizance was revoked on February 3, 1978, after a Superior Court justice found that the petitioner (Bridges) had violated a condition of that recognizance. Bridges alleges that the hearing justice erred in finding a violation based on evidence that had been obtained pursuant to an invalid search warrant. Bridges further contends that, even if constitutionally infirm evidence may be introduced at a bail hearing and thereby used to justify a revocation, the state deprived him of his constitutional right to a speedy trial because he was held without bail for a period of 80 days

before the criminal charge upon which bail had been revoked came on for hearing and disposition.

On November 23, 1977, Bridges was charged with possession with intent to deliver a controlled substance (marijuana) — a violation of G.L. 1956 (1968 Reenactment) §21-28-4.01 (A)(2)(a) (the Rhode Island Controlled Substances Act.) He was arraigned on November 30, 1977, pleaded not guilty, and was released on personal recognizance of $1,000. Later, on December 14, 1977, detectives of the Providence Police Department searched his apartment and seized what was alleged to be 21 tablets of phencyclidine (PCP, or "angel dust") and 6 pounds of marijuana.[1] On the following day Bridges was arraigned on three separate violations of ch. 28 of title 21; he pleaded not guilty and was released on cash bail of $500 on each of the three new charges.

On the basis of the new charges brought against Bridges, a warrant was issued and a report of his alleged violation of the conditions of his earlier recognizance was filed. Bridges appeared before the Superior Court on January 25, 1978. There a justice of that court revoked the November 1977 recognizance but released Bridges on $500 cash bail pending the revocation hearing. On February 3, 1978, the revocation hearing was held. At the time the trial justice rejected Bridges' argument, made through counsel, that the testimony of the detectives who had taken part in the December search could not serve as a basis of his revocation finding because the search warrant and its supporting affidavit which led to the issuance of the warrant were defective. When announcing his decision to revoke Bridges' recognizance and temporary bail, the trial justice made perfectly clear that, in his opinion, tainted evidence could indeed be used to establish grounds for revocation.

On April 24, 1978, Bridges returned to the Superior Court after having been held without bail for 80 days, retracted his

---

[1]Analysis by a state toxicologist of certain of the drugs seized by the detectives confirmed that those drugs were indeed phencyclidine and marijuana.

not guilty plea to the November 1977 charge, and pleaded nolo contendere. A judgment of conviction was entered, and Bridges was sentenced to serve 2 months and 21 days, the sentence to run as of February 3, 1978; in other words, Bridges' sentence corresponded exactly to the amount of time which he had already spent in the Adult Correctional Institutions (ACI).

Admittedly, this controversy is technically moot due to Bridges' ultimate release from the ACI. As a general rule this court will not consider moot, abstract, academic or hypothetical situations. *Perry* v. *Petit*, 116 R.I. 89, 90, 352 A.2d 396, 396 (1976); *Town of Scituate* v. *Scituate Teachers' Ass'n*, 110 R.I. 679, 684, 296 A.2d 466, 469 (1972). Nonetheless, we will consider questions of extreme public interest that, although technically moot, are capable of repetition and yet evade review. *DiMasi* v. *Mullen*, 117 R.I. 281, 282, 366 A.2d 1149, 1150 (1976). We believe that Bridges' petition raises two such questions, and we have, therefore, agreed to consider: (1) whether evidence obtained pursuant to an illegal search and seizure may be used at a bail revocation hearing, and (2) how long an accused whose bail has been revoked may be held before either facing trial on the underlying charge or being readmitted to bail.

## I

Bridges first argues that at a bail revocation hearing the state must establish a violation of a condition of release through the introduction of evidence that would be legally admissible at trial. We do not believe that the state need meet so strict and formal a standard. Rather, we conclude that evidence, even though illegally obtained, is admissible at a bail revocation hearing if it is factually reliable; in other words, such evidence may, where relevant and reliable, serve as the evidence required to "reasonably satisfy that there [has] been a violation.' " *Mello* v. *Superior Court*, 117 R.I. 578, 587, 370 A.2d 1262, 1266 (1977).

In *Mello* we considered the more basic questions whether bail, which is granted by the constitution as of right in

noncapital cases,[2] may be conditioned at all and, if so, whether it may be revoked for violation of a statutorily imposed condition of good behavior. *See* G.L. 1956 (1969 Reenactment) §12-13-1; Super. R. Crim. P. 46(d). We answered each question in the affirmative. *Mello* made clear that the right to bail, although guaranteed, is not absolute and may be granted subject to conditions reasonably calculated to further the purpose of bail itself, that is, to ensure the presence of the accused at court. 117 R.I. at 582, 370 A.2d at 1264. *See* Super R. Crim. P. 46(c)-(d). Specifically, the statutory condition of good behavior involved in both *Mello* and in this case was approved as a legitimate means, for example, to combat the pressure to flee the court's jurisdiction that inevitably builds as the accused increases the number of possible convictions to which he is subject. 117 R.I. at 582, 370 A.2d at 1264. Finally, *Mello* held that a trial court possesses inherent authority to revoke bail for accused as part of the terms of his release; that power, we concluded, is simply one aspect of the court's power to enforce its orders. *Id.* at 583-84, 370 A.2d at 1265.[3]

---

[2]R.I. Const. art. I, §9, reads in part as follows:

> "All persons imprisoned ought to be bailed by sufficient surety, unless for offenses punishable by death or by imprisonment for life, when the proof of guilt is evident or the presumption great."

*See, e.g., Mello* v. *Superior Court*, 117 R.I. 578, 581, 370 A.2d 1262, 1264 (1977; *Taglianetti* v. *Fontaine*, 105 R.I. 596, 600, 253 A.2d 609, 611 (1969). Indeed, even in capital cases, where bail does not exist as a matter of right, an accused is always entitled to a hearing to determine whether bail should be granted as a matter of discretion. *DiMasi* v. *Mullen*, 117 R.I. 281, 283, 366 A.2d 1149, 1150 (1976); *Fountaine* v. *Mullen*, 117 R.I. 262, 269-71, 366 A.2d 1138, 1143-44 (1976).

[3]Of course, revocation of bail is only one of the various ways that a trial court may, in its discretion, enforce those conditions to which the accused acceded upon his release. The Superior Court Rules of Criminal Procedure direct that the court, after breach by the accused of a condition of his recognizance and upon motion by the state, declare a forfeiture of the bail. Super. R. Crim. P. 46(g). The court may further, where appropriate, set new and higher bail with more stringent conditions, *see Mello* v. *Superior Court*, 117 R.I. 578, 583, 370 A.2d 1262, 1264 (1977); ABA Project on Minimum Standards for Criminal Justice, *Standards Relating to Pretrial Release* §5.7 & Commentary (approved draft, 1968), or may even resort to use of the contempt power. *See* Super. R. Crim. P. 46(e). Nevertheless, *Mello* settled that a trial court is not restricted to these options when

106

Our purpose in reviewing *Mello* at such length is simply to emphasize that the determinative question at a bail revocation hearing is a factual one, namely, whether the accused has violated a condition of his release.[4] Viewed properly, therefore, it is evident that Bridges' legal guilt or innocence with regard to either the underlying (November 1977) charge or subsequent (December 1977) charge is not an issue; the focus of a bail revocation hearing is not, therefore, towards the time of trial. Rather, a bail revocation hearing fits the "backward-looking model" alluded to in *Massey v. Mullen,* 117 R.I. 272, 275-76 n.5, 366 A.2d 1144, n.5 (1976), and we consequently adopt the rules normally applied in such cases with regard to the admissibility of evidence. Specifically:

> "Hearsay and other evidence which would be incompetent at trial, as well as illegally obtained evidence, would be admissible * * * ." *Id.* at 276 n.5, 366 A.2d at 1146 n.5.[5]

We reach the same conclusion by application of the analysis traditionally employed to determine whether the

---

it determined that the constitution does not provide a "continuing, renewable right to bail on the same charge where a bail condition has been breached." 117 R.I. at 583, 370 A.2d at 1264.

[4]The "right to bail" provided by R.I. Const. art. I, §9, was not determinative of the issue presented in *Mello* and is manifestly not determinative of that presented here. Certainly, Bridges cannot contend that he was in any way denied the right guaranteed him by art. I, §9; he was, after all, granted bail on both the November and December 1977 charge.

[5]The question in *Massey v. Mullen,* 117 R.I. 272, 366 A.2d 1144 (1976), was whether a confession obtained in violation of the *Miranda* guidelines could be used in an initial bail hearing to establish that "proof of guilt [of a crime punishable by death or life imprisonment] is evident or the presumption great"; upon such a showing by the state in the case of such a crime, R.I. Const. art. I, §9, does not require that an accused be admitted to bail. *E.g., Fountaine v. Mullen,* 117 R.I. 262, 263-64, 366 A.2d 1138, 1139-40 (1976). Because we had decided that the test to be applied in such cases is whether the evidence, when "viewed in the light most favorable to the state * * * [is] legally sufficient to sustain a verdict of guilty," *Fountain v. Mullen,* 117 R.I. at 268, 366 A.2d at 1142, there was no question but that the initial bail hearing — in contrast to a bail revocation hearing — "looks forward to the trial stage rather than backward toward the arrest." *Massey v. Mullen,* 117 R.I. at 275, 366 A.2d at 1146. That being the case, we held that

exclusionary rule should be extended beyond its current scope. In *State* v. *Spratt,* 120 R.I. 192, 386 A.2d 1094 (1978), Rhode Island joined the numerous jurisdictions that permit illegally seized evidence to be used in probation revocation hearings, hearings which are, at least for purposes of the exclusionary rule, analogous to bail revocation hearings. *Spratt* perceived as the basis of most of the relevant case law

> "the accepted constitutional tenet that the exclusionary rule proscribing the admission of concededly relevant and reliable evidence is designed, not to 'redress the injury to the privacy of the search victim,' [citations omitted] but to deter unconstitutional methods of law enforcement." *Id.* at 193, 386 A.2d at 1095.

With the above principle as a guide, we must seek to balance the benefit of any possible increased deterrence of future police misconduct achieved by extension of the rule against the harm likely to result to society from that extension. *E.g., State* v. *Spratt,* 120 R.I. 192, 386 A.2d at 1095. Again, *Spratt* provides the reasoning applicable to the case before us; here, as there

> "it would be unrealistic to believe that a police officer will be further deterred from engaging in an unlawful search by the knowledge that his conduct will render the illegally obtained evidence inadmissible not only at a criminal trial but also at a revocation hearing." *Id.*[6]

---

evidence inadmissible at trial because constitutionally infirm is also inadmissible at a bail hearing. 117 R.I. at 280, 366 A.2d at 1149. *Cf. State* v. *Skirvin,* 113 R.I. 443, 448, 322 A.2d 297, 300 (1974) ("there was nothing informal in the manner in which the bail hearing was conducted").

[6]We realize, as did the court in *State* v. *Spratt,* 120 R.I. 192, 386 A.2d 1094 (1978), that specific instances of police misconduct may arise that will force us to reassess the need for application of the exclusionary rule. Because the search conducted in this case involved no intentional transgression of Bridges' rights, we follow our lead in *Spratt* and "leave to a future day consideration of the effect of that kind of conduct on the applicability of the exclusionary rule." *State* v. *Spratt,* 120 R.I. 195, 386 A.2d at 1095 n.2, *citing United States ex rel. Sperling* v. *Fitzpatrick,* 426 F.2d 1161, 1164 (2d Cir. 1970).

Against this negligible increase in deterrence of police misconduct there weighs the serious harm that would inevitably result to the bail system were a violator permitted to escape the consequences of his act solely because of the exclusionary rule. Again, our bail system is designed to ensure the accused's presence at court and to keep the accused as much under the control of the court as if he were actually in the custody of a court officer. *Mello v. Superior Court*, 117 R.I. at 582, 370 A.2d at 1264; *Lemme v. Langlois*, 104 R.I. 352, 356, 244 A.2d 271, 273 (1968). At the same time, it allows the presumptively innocent accused to remain free whenever possible. Proven abuse of the conditional liberty enjoyed by an accused while on bail is evidence that the accused is either unable or unwilling to conduct himself as if he were in fact in the custody of a court officer. Because of the harm that would thereby be done to the very core of the bail system, we believe it unwise to exclude reliable evidence relevant to the question of violation.[7]

## II

Having determined that illegally seized evidence, if factually reliable, may be introduced at a bail revocation hearing and used to support a revocation decision, we must now consider how long the bail violator may be held before either facing trial on the underlying charge or being readmitted to bail. In the instant case, Bridges was incarcerated on February 3, 1978 (having at the revocation hearing requested an immediate trial), first petitioned this court for a writ of habeas corpus on February 21, 1978, and was released on April 24, 1978, after a period of 80 days' incarceration.

First, we observe that, although G.L. 1956 (1969

---

[7] In *State v. Spratt*, 120 R.I. 192, 386 A.2d 1094, 1096 & n.3 (1978), we conclude that G.L. 1956 (1969 Reenactment) §9-19-25, the statutory exclusionary rule, did not answer the question whether illegal evidence could be introduced at a probation revocation hearing because that statute, by its terms, prohibits the introduction of illegal evidence only "[i]n the *trial* of [an] action in any court of this state." (Emphasis added.) Because a bail revocation hearing is also in no sense a "trial," we hold §9-19-25 equally inapplicable to the case before us today.

Reenactment) §12-13-7 provides that any person denied bail after being charged with the crime of treason against the state, murder, robbery, rape, arson, or burglary shall be tried or bailed within the 6-month period following his demand for a trial, there is no statutory provision governing the time within which one formerly released on bail must be tried. In fashioning a rule to cover the contingency, we keep in mind certain principles. First, although *Mello* decided that bail revocation is a proper remedy for violation of a condition of release, it is also true that revocation is a drastic remedy indeed, operating as it does to deprive a person quite effectively of his liberty. We realize that this problem can be particularly acute in the case of an accused who, upon breaching a condition of his bail or recognizance, may find himself incarcerated for a period approximating that of the potential sentence on the underlying charge.[8]

In seeking to establish a time frame within which an individual must be tried on the charge upon which bail has actually been revoked (here, the November 1977 charge), a balance must be struck between the interests of both the state and the accused. The interests of the accused are obvious. On the other hand, we are not unmindful of the practical difficulties that will bear upon the state as it attempts to expedite the trial of those who may find themselves in the same position as Bridges was in early 1978. The 6-months-trial-or-bail mandate found in §12-13-17, in our opinion, serves as a somewhat appropriate guideline in balancing the competing interests of the accused and the state. Consequently, proceeding under the broad grant of supervisory jurisdiction conferred upon us over inferior tribunals by our state constitution and implementing legislation,[9] we hold that no more than 90 days shall elapse between the time of

---

[8]The problem is analogous to that alluded to in *State v. Abbott*, 113 R.I. 430, 432-33, 322 A.2d 33, 35 (1974), where we noted that denial of bail pending appeal, in cases in which the sentence imposed is short, can actually nullify the right of appeal.

[9]*See State v. DeLomba*, 117 R.I. 673, 676-77, 370 A.2d 1273, 1275 (1977); *State v. Fortes*, 114 R.I. 161, 172, 330 A.2d 404, 410-11 (1975).

bail revocation and trial on the charge upon which bail has been revoked. If trial is not commenced prior to expiration of the 90-day period, the accused shall be readmitted to bail.

For the reasons stated above, the petition for habeas corpus is denied pro forma.

*Little, Little, McDonald & Gaschen, Joseph T. Little,* for petitioner.

*Julius C. Michaelson,* Attorney General, *John S. Foley,* Special Assistant Attorney General, for respondent.