DECISION
This matter is before the Court for a hearing on bail. A Providence County grand jury indicted the Defendant, Robert A. Collazo, charging him with the murder of Brian Araujo, in violation of R.I. General Laws §§11-23-1 and 11-23-2.
In considering the question of bail on behalf of the Defendant, the analysis begins with Article I, section 9 of the Rhode Island Constitution. Article 1, section 9 provides that "all persons ought to be bailed by sufficient surety, unless for offenses punishable by imprisonment for life . . . when proof of guilt is evident or the presumption is great."
The Rhode Island Supreme Court has held that in making this determination at a pretrial bail hearing, the hearing judge shall determine "whether the facts adduced by the state, viewed in the light most favorable to the state (i.e., notwithstanding contradiction of them by defense proof), are legally sufficient to sustain a verdict of guilty." Fountaine v. Mullen, 117 R.I. 262, 268, 366 A.2d 1138, 1142 (1976). In making this assessment, the court may only rely on legally admissible evidence. Massey v. Mullen, 117 R.I. 272, 280, 366 A.2d 1144, 1148-49 (1976). An assessment of the credibility of witnesses is not necessary. DiMasi v. Mullen, 117 R.I. 281, 283, 366 A.2d 1149, 1150 (1976).
Our Supreme Court has further held that where, or if, a hearing judge determines that "proof of guilt is evident or the presumption great" of a crime punishable by life imprisonment, the hearing judge may determine whether the defendant should be granted bail as a matter of discretion.Fountaine, 117 R.I. at 269, 366 A.2d at 1143. In determining whether to exercise discretion, there are a number of guidelines the court may consider, including the following:
 1. The habits of the accused regarding respect for the law, insofar as they are relevant to whether the defendant would pose a threat to the community.
 2. The defendant's local attachments to the community, so as to ensure his appearance in court regarding the charges. Such attachments to the community include (a) family/community ties, (b) roots (long presence) in the community, (c) employment history, (d) stability of residence, and (e) criminal history.
 3. The severity of the sentence imposed and circumstances relevant to whether the accused would remove himself from the jurisdiction of the court. State v. Abbott, 113 R.I. 430, 432, 322 A.2d 33, 35 (1974).
In the present case, a review of the evidence offered by the State establishes that Michael Semegen, an eyewitness in the area of the alleged murder of Brian Araujo (the "victim"), made certain specific observations that when viewed in a light most favorable to the State are legally sufficient to sustain a verdict of guilty. On the afternoon of March 10, 2002, Mr. Semegen visited Jenk's Park in Central Falls with his girlfriend and daughter. While he was looking toward the area of some stone steps that lead to a tower within the park, he saw two men at the bottom of a ramp about twenty to thirty yards away from him. One of these men was lying down while the other stood above him. The man who was standing twice pushed his foot into the stomach of the man lying down and stated "come on — get up." The man then said to several kids in the area, "take a look at what happens." After this portion of his testimony at the bail hearing, Mr. Semegen pointed out the Defendant in the courtroom and stated, without doubt, that the Defendant was the man he saw on March 10, 2002 pushing on the victim's stomach with his foot.
Michael Semegen further testified that he saw a red spot on the shirt of the victim and a hole in the armpit of his shirt. He observed the Defendant "stomp" on the victim's face and kick him. He then saw blood coming out of the victim's mouth, and spread across his face and the bridge of his nose. Mr. Semegen then headed to the Fletcher Street entrance of Jenk's Park, about forty yards away, to call 911 at a convenience store. After he made the 911 call, he headed back to the park and entered through Fletcher Street. He flagged down a cruiser responding to the call and described to the officer, Sgt. Steven R. Sullivan, what he had seen moments earlier on the other side of the park. Mr. Semegen provided a description of the man who had been kicking the victim, and as Sgt. Sullivan drove around to the opposite side of the park he returned on foot to the ramp near the tower. As rescue people were aiding the victim, Mr. Semegen observed the Defendant, unguarded, leaning against a railing nearby. Sgt. Sullivan testified that he saw a man, fitting the description he had just received from Mr. Semegen, standing to the left of where the victim was lying. He noticed that there was some blood on the Defendant's blue jeans and shoes.
Mr. Semegen pointed out the Defendant at the scene and stated that he was the man who had kicked the victim. A search of the area around the tower by the Central Falls Police Department yielded a knife that had been broken into three pieces.
Upon placing the Defendant under arrest, Capt. Joseph Moran of the Central Falls Police Department advised the Defendant of his Miranda rights. Subsequently, the Defendant indicated on a "Rights Form" that he understood those rights. Capt. Moran interviewed the Defendant and said interview was videotaped and transcribed. During the interview, the Defendant stated that he had stabbed the victim and that, after doing so, the knife broke into pieces. The Defendant also stated during the interview that he had kicked the victim's face.
I have reviewed and carefully considered all of the evidence presented by the State in the light most favorable to the State, and I find that this case falls squarely into Article I, section 9, inasmuch as the Defendant is charged with offenses punishable by life imprisonment; and, further the evidence produced, including the testimony of Michael Semegen; the testimony of police officers; and the Defendant's statement, if placed before a jury would justify and legally support a verdict of guilty regarding the first degree murder charge. Accordingly, I find that proof of guilt is evident and the presumption great.
In light of this determination, I will permit Defendant to argue whether he should be granted bail as a matter of discretion.
This Defendant will be held without bail pending argument by counsel regarding the factors enumerated in Abbott.