278 A.2d 839.

IDALIO F. SANTOS *vs.* FRANCIS A. HOWARD, WARDEN.

JUNE 29, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. This petition for habeas corpus filed on June 1, 1970, alleges that the petitioner is in the custody of the respondent warden but does not allege that such custody is unlawful. The petitioner is serving a two-year sentence at the Adult Correctional Institutions, which term of imprisonment began on December 18, 1969. It is further alleged that the petitioner had moved in Superior Court for the allowance of what he describes as "Awaiting Trial Time," this being an obvious reference to G. L. 1956 (1969

Reenactment) §12-19-2. That section, in pertinent part, provides that whenever the court in imposing punishment prescribes imprisonment, "* * * such sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * *." The petitioner prays that this court recognize his right to the allowance of time which he contends he spent imprisoned at the Adult Correctional Institutions awaiting sentence. In all the circumstances, we think that the interests of justice will be best served if we deal with the purported petition for habeas corpus as a petition for relief pursuant to the provisions of said §12-19-2.

It is not disputed that on May 1, 1968, petitioner was given a two-year suspended sentence on indictment No. 68-177, in which he was charged with an assault with intent to commit rape. Some weeks later, to wit, on May 22, 1968, the provisions of §12-19-2 became effective. About a year later petitioner was ordered held without bail as an alleged violator of the terms of his probation and was incarcerated from May 31, 1969, to July 8, 1969, a period of 38 days. During the course of further investigations of charges that he had violated his probation, he was again incarcerated, once for a period of 12 days from August 18, 1969, to August 29, 1969, and for a period of seven days from December 11, 1969, to December 18, 1969. In all, according to his allegations, he was incarcerated while under investigation as a probation violator for a total of 57 days. On December 18, 1969, the suspension of his sentence of May 1, 1968, was vacated, and execution of that sentence was ordered and petitioner was committed to a term of two years.

In *State* v. *Holmes*, 108 R. I. 579, 277 A.2d 914, this court sidered the pertinent provisions of §12-19-2 and held that the phrase "while awaiting trial and while awaiting sentencing" must be construed as embracing confinement time

spent for any reason whatsoever in connection with an offense for which a defendant is subsequently sentenced. We further held, affirming the view we took in *State v. Taylor*, 108 R. I. 114, 272 A.2d 680, that where a sentence had been imposed prior to May 22, 1968, the effective date of §12-19-2, an application for credit for the time spent in confinement while awaiting sentencing must be made to the court wherein sentence was imposed and directed to the discretion of that court. In *Taylor* we were applying the statute to a situation in which the petitioner, prior to the effective date of the statute, had been sentenced to a term of 25 years and had been committed at the time sentence was imposed. That case did not involve the imposition of a sentence with execution thereof suspended.

In *Holmes* we went on to hold, however, that in cases in which sentence was imposed subsequent to May 22, 1968, the effective date of §12-19-2, time spent in confinement awaiting the imposition of such sentence is to be administratively credited in the computation of the time when the sentence shall have been served, making it clear that such computations of the time to be credited are to be made by the warden of the Adult Correctional Institutions in his administrative capacity. In the *Holmes* case the sentences pertinent to the question raised were imposed upon the petitioner and suspended on April 10, 1969, well after the effective date of the statute and after he had been confined for 245 days awaiting such a disposition. The sentences then imposed were for terms of three and five years, respectively, with execution suspended and five years' probation ordered on each indictment.

The question with which we are confronted here differs from the questions presented in either *Taylor* or *Holmes*. Here petitioner some three weeks prior to the amendment of §12-19-2 was given a two-year sentence with execution thereof suspended subject to probation for a term of five

years. However, the suspension of that sentence was not vacated until December 18, 1969, after he had been confined for a period of 57 days pending such a disposition by the court. We are confronted, then, with the question of whether a sentence is "imposed" within the contemplation of the rule laid down in *Holmes* at the time sentence is pronounced and execution thereof· suspended or at the time when the suspension of the sentence is vacated and execution thereof is ordered.

In seeking to ascertain the purpose for which the Legislature enacted this legislation, we consider as significant the fact that prior to 1968 §12-19-2 provided only that a court, in imposing punishment after conviction by way of a fine or imprisonment, had the discretion to select the type of punishment to be imposed and the amount or term thereof within the limits prescribed by law.[1] We attach, however, even greater significance to the fact that the Legislature in 1968 amended §12-19-2 by adding thereto the requirement that when a court selected imprisonment as the form of punishment, "* * * such sentence or sentences imposed shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * * and any sentence or sentences in effect at present * * * may be reduced in a like manner by the court which imposed such sentence upon application by the person serving such sentence to the said court." Public Laws 1968, chap. 125, sec. 1.

The substance of the amendatory provisions of §12-19-2 is persuasive that the relief contemplated by the Legislature referred to the time of incarceration and that the right

---

[1]General Laws 1956, §12-19-2, before amendment read as follows: "Whenever it is provided that any offense shall be punished by fine or imprisonment, the court imposing such punishment may, in its discretion, select the kind of punishment to be imposed, and, if such punishment be fine or imprisonment, the amount or term of the same within the limits prescribed by law."

to credit for such pretrial detention accrues to any petitioner whose term of imprisonment began after the effective date of §12-19-2, as amended. The right should apply, therefore, to time spent in confinement awaiting a disposition which resulted in the execution of a suspended sentence.

In our opinion, this legislation was intended to bring about in this state conformity with the advanced penological theory that there should be reasonable uniformity in the sentencing of persons convicted of crimes. It is reasonable to conclude that the Legislature was motivated in so amending §12-19-2 by an intention to remove, to whatever degree possible, inequities in the imposition of punishment. Obviously as a result of its inquiries into the administration of criminal justice, the Legislature recognized the inability of the poor and underprivileged to escape pretrial or presentence detention. Usually this resulted from an inability to furnish bail or to secure the assistance of skilled counsel to overcome administrative delays that tend to impair their right to a speedy trial. The Legislature was equally aware, no doubt, that such pretrial detention is rarely endured by the affluent or the powerful. We believe that this legislation was enacted in order to eliminate such inequities in the administration of criminal justice by requiring that sentences, the service of which has begun after the effective date of §12-19-2, be reduced by the period of time in which the petitioner was confined awaiting trial or awaiting sentencing.

This is not to disagree with the state's contention that a suspended sentence is one that has actually been imposed but the execution thereof suspended. We so held in *State* v. *Robalewski,* 96 R. I. 296, 191 A.2d 148. What we are concluding is that the purpose for which the legislation was enacted was to establish a right in those who began to serve a sentence after the enactment of the amend-

ment to §12-19-2 to have time served while awaiting a disposition which resulted in a vacation of the suspension in the order of execution of sentence credited in order to reduce the time to be served under such sentence. We will not, therefore, resort to technicalities or rigid construction to frustrate the legislative purpose in enacting this legislation. We, therefore, hold that where a suspended sentence is ordered executed after the effective date of the act, May 22, 1968, the mandatory provisions of the act become applicable at the time execution is ordered, and it is the administrative duty of the warden to compute the amount of such time so served while awaiting such disposition and credit it against the sentence.

The petition for relief under §12-19-2 is granted, and an order may be prepared for entry by this court directing the respondent warden to compute the time served by the petitioner prior to the execution of sentence on December 18, 1969, and credit it against the term to be served.

Mr. Justice Kelleher, with whom Mr. Justice Joslin joins, dissenting. Uniformity in sentencing may be the goal which is being sought by the penologists of today. However laudable this aim, it cannot supplant or override certain basic constitutional and legal principles which have been repeatedly enunciated by this court. The mandatory portion of the 1968 amendment to §12-19-2 is applicable only to those sentences which were imposed subsequent to May 22, 1968 — the day the amendment became law. In *Robalewski, supra,* the difference between a deferred and a suspended sentence was delineated. A suspended sentence is one that has actually been imposed while its execution has been postponed. The deferred sentence is not imposed unless and until there is a finding that the defendant has violated the terms of his deferred sentence agreement. The distinction which differentiates the *Holmes* case from the instant case is the fact that in *Holmes* the

suspended sentence was imposed after May 22, 1968. On the other hand, the suspended sentence given Santos was imposed about three weeks prior to the effective date of the 1968 amendment.

The majority's construction of §12-19-2 casts the statute in an unconstitutional mold. It has often been declared that the General Assembly cannot modify the terms of a sentence once it has been imposed because any such legislation would amount to an unconstitutional exercise of judicial power. *State* v. *Taylor, supra; Opinion to the Governor,* 91 R. I. 187, 162 A.2d 814; *State* v. *Garnetto,* 75 R. I. 86, 63 A.2d 777. This court has pointed out on two previous occasions that a person could not take advantage of an act liberalizing "good time" credits that had been enacted after sentence had been imposed. Any retroactive effect of such a statute, we said, would constitute an indirect but illegal legislative alteration of a court's judgment. *Ouimette* v. *Langlois,* 97 R. I. 210, 196 A.2d 828; *Sousa* v. *Langlois,* 97 R. I. 196, 196 A.2d 838. What was said about the "good time" statute is equally applicable to the so-called "dead time"[1] provisions of §12-19-2. I cannot, therefore, subscribe to the view expressed by the majority of my colleagues.

*James Cardono,* Public Defender, *Paul E. Kelley,* Asst. Public Defender, for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.

---

[1]In *State* v. *Winston,* 105 R. I. 447, 252 A.2d 354, we described "dead time" as that interval spent in jail which cannot be used in determining a prisoner's eligibility for parole.