315 A.2d 66.

STATE *vs.* ROBERT A. SAVASTANO.

FEBRUARY 14, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The defendant is before us on his exception to the denial of his motion seeking a reduction in a six-year prison sentence imposed upon him by a justice of the Superior Court. His exception is based upon the

requirements of the so-called "dead time" statute, G. L. 1956 (1969 Reenactment) §12-19-2. Hereinafter, we shall refer to the defendant by his last name. The narrative which follows is based upon the notations found on a docket sheet and the observations made by the sentencing justice in his written rescript denying the motion.

In February 1969, Savastano appeared in the Superior Court and received a deferred sentence after pleading nolo to an indictment that charged him with unlawful possession of heroin. Later on, in August 1970, an assistant Attorney General asked that a capias issue for Savastano's arrest because of his failure to abide by the terms of his deferred sentence agreement. A week later, an order was entered directing that Savastano be admitted to the Rhode Island Medical Center for a medical and psychiatric evaluation.

Savastano returned to the Superior Court on November 18, 1970. The docket sheet for the unlawful possession indictment shows that he was "remanded to [the] Medical Center voluntarily." In his decision the justice, who, incidentally, was on duty at all times when Savastano appeared in court, noted that this action was taken at Savastano's request. While spending a weekend furlough away from the Medical Center, Savastano was involved in an assault with a knife upon one Thomas J. Silva. He was brought before the Superior Court on December 22, 1970. An order was entered holding Savastano without bail at the Adult Correctional Institutions pending a scheduled January 27, 1971 violation hearing.

The January hearing was held. Savastano was adjudged to have violated the terms of his agreement. However, the sentencing justice continued Savastano on his deferred sentence status in order that defendant could enter a Massachusetts drug rehabilitation center for a trial visit. This action was taken at the request of Savastano's at-

torney. On March 24, 1971, sentence was further deferred in accordance with Savastano's desire to remain at the rehabilitation center.

Sometime in May 1971, Savastano took an unauthorized leave from the rehabilitation center. A capias was issued. Savastano once again appeared before the Superior Court where he was allowed another chance to return to the Massachusetts facility. The deferred sentence was converted into a six-year suspended sentence, the suspension to remain in effect so long as he remained at the center. Savastano left the courthouse in the company of a member of the center's staff. Once he hit the street, he "took off." He was arrested about two weeks later. The suspension was removed and he began serving the six-year sentence.

Savastano seeks a credit for 137 days—31 days of which were spent at the Rhode Island Medical Center (November-December 1970); the remaining 106 days relate to Savastano's sojourn at the drug rehabilitation center (February to May 1971).

The dead-time statute requires an automatic reduction of any sentence imposed subsequent to May 22, 1968 by the number of days a defendant has spent in confinement "while awaiting trial and while awaiting sentencing." In State v. Holmes, 108 R. I. 579, 277 A.2d 914 (1971), we ruled that the phrase "while awaiting trial and while awaiting sentencing" must be construed as embracing confinement time spent for any reason whatsoever in connection with an offense for which a defendant is subsequently sentenced. Later, in Santos v. Howard, 108 R. I. 666, 278 A.2d 839 (1971), this court declared that it would liberally construe the statute to implement the legislative intent which led to its enactment. According to Santos, §12-19-2 represents a legislative recognition that the poor and underprivileged are unable to avoid pretrial or presentence detention, and a legislative attempt to remedy this situation.

Savastano contends that anyone who has been involuntarily confined in a medical or rehabilitative facility as the result of a criminal offense and is subsequently sentenced on that offense should have the advantage of the legislation presently under consideration. In denying Savastano's motion the sentencing justice relied upon the fact that Savastáno's stays at both the Medical Center and the rehabilitation center were the results of Savastano's own request. He was the one who asked that he be allowed to go to these two institutions. While the sentencing justice's rationale has merit, we affirm his actions on a ground somewhat different from the one upon which he based his denial.

In *Holmes,* Holmes had received a deferred sentence in 1967 as the result of an indictment charging him with the unlawful possession of a hypodermic needle and syringe. On July 3, 1968, he was charged on two indictments. One charge related to the unlawful possession of a narcotic drug. The second concerned an unlawful sale of a narcotic drug. Holmes was committed to the Adult Correctional Institutions pending a disposition of the three indictments. He spent 245 days awaiting such disposition. On April 10, 1969, a justice of the Superior Court before whom Holmes appeared violated him on his deferred sentence and imposed a three-year suspended sentence. He imposed a five-year suspended sentence on the 1968 possession indictment and deferred sentence on the sale indictment. We ruled in *Holmes* that some two months later when the sentencing justice vacated the suspension of the three and five-year sentences which were to run concurrently, Holmes was entitled to an automatic 245-day credit for the time he was imprisoned while awaiting a disposition of the three charges pending against him.

We believe the key question to be asked of anyone who seeks relief under §12-19-2 is whether at the time of his

confinement for which he seeks a credit, he was awaiting a judicial disposition of an incident or complaint which consequently resulted in the deprivation of his liberty. The answer in the case at bar is obvious. All the time Savastano was a patient at the Medical Center and during his 106-day sojourn at the rehabilitation center, he was undergoing care and therapy. During neither of those stays was he being detained for an incident which ultimately resulted in his incarceration. Actually, the incident which precipitated Savastano's six-year stint was his rapid and solo departure from the courthouse in July 1971.

The defendant's appeal is denied and dismissed.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Allegra E. Munson,* Special Counsel, for defendant.