322 A.2d 297.

STATE *vs.* OWEN SKIRVIN, JR.

JULY 15, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

444

KELLEHER, J. This is an appeal from the denial by a Superior Court justice of the defendant's motion that his sentence be reduced in accordance with G. L. 1956 (1969 Reenactment) §12-19-2.

On June 19, 1971 at 6:30 p.m. Thomas A. Blum entered a Westerly barroom. Among those present were defendant and a Michael Serpa. Skirvin was then on a deferred sentence because of his involvement with an October 1968 breaking and entering incident.

Blum sought out Serpa. He told him of his financial difficulties and his need for money. Within minutes, Serpa and Blum were "scrimmaging" on the floor. During this phase of the action, Skirvin contributed to the general mayhem by kicking Blum in the ribs. The bartender asked Blum to leave. Since Blum ignored the request, the bartender turned his attention to serving his customers.

One of the customers was Mrs. Donna M. Rackett. She met her husband at the bar at 7:30 p.m. They rendezvoused just in time to see Skirvin throwing Blum in and around the premises. Skirvin had taken umbrage at something Blum said about his girlfriend. Mrs. Rackett related how Skirvin would pick up Blum, throw him against a wall, lift him up from the floor and start the process all over again. During this time, Blum's head first struck an empty beer case and later hit the machine that supplied the ice for the customers' favorite libations. Blum's blood was on the barroom floor. He lapsed into a semiconscious condition. The Racketts drove Blum to his home. The next day Blum was found dead in his bed. Death was attributed to a brain hemorrhage which occurred in the right rear

portion of the skull. The medical examiner described the battered and bruised condition of Blum's body. He also informed the court that the skull injuries were consistent with the head striking a blunt object.

Skirvin and Serpa were arrested on June 21, 1971. They appeared in the District Court where they pleaded not guilty to two complaints that charged each of them, respectively, with the murder of Blum. Since murder was not a bailable offense in the District Court, they were committed to the Adult Correctional Institutions. One week later, an indictment was returned charging both of them with Blum's murder. They pleaded not guilty and each of them filed a petition asking that the Superior Court release them on bail pending trial. The state not only opposed the petitions but also asked the trial justice to determine whether Skirvin had violated the terms of his 1968 deferred sentence agreement. After a lengthy hearing held on July 19 and 20, 1971, Serpa was released on bail, but Skirvin's petition was denied and he was adjudged a violator of the 1968 agreement. He was held without bail and remanded to the Adult Correctional Institutions to await a disposition of the deferred sentence.

On September 15, 1971, Skirvin received a four-year sentence for the 1968 break. The sentence was reduced by the amount of time he was incarcerated while awaiting sentencing, to wit, July 20 to September 14. The murder trial began on April 11, 1972. On April 19, after seven days of trial, the charge was reduced from murder to manslaughter. Serpa and Skirvin each pleaded nolo. Serpa received a one-year suspended sentence while Skirvin received a seven-year sentence that was to run concurrently with his four-year breaking and entering sentence.

In January 1973, Skirvin filed the motion asking that he be given credit for the time he was confined while awaiting trial on the murder charge. He described the period

as beginning on June 21, 1971 and ending with his nolo plea on April 19, 1972. The trial justice who had imposed the seven-year term expressed a willingness to deduct the period from June 21, 1971 to September 14 but refused to give Skirvin any credit for the period from September 15 to April 1972. His refusal was grounded on his assertion that from September 15 on Skirvin was no longer in an awaiting trial status but had begun serving a four-year sentence.

Section 12-19-2 in pertinent part reveals that "* * * such sentence or sentences imposed [on and after May 22, 1968] shall be reduced by the number of days spent in confinement while awaiting trial and while awaiting sentencing * * *." Skirvin argues that the trial justice's action flies in the face of the crystal-clear language of the statute. We cannot agree.

The primary purpose in construing any statute is to effectuate the legislative intent. We have previously held that the General Assembly's enactment of the so-called dead-time provisions of §12-19-2 was a benevolent effort to assist the person who, because of an inability to make bail, had been cast into a sort of limbo[1] as he awaited the disposition of the charge or complaint which had caused his incarceration. *Santos* v. *Howard,* 108 R. I. 666, 278 A.2d 839 (1971); *State* v. *Winston,* 105 R. I. 447, 252 A.2d 354 (1969).

Recently we said that the essential inquiry to be made of one seeking "awaiting trial or sentencing" credits is whether during the time of his confinement for which he seeks credit he was awaiting a judicial disposition of an incident which consequently caused a physical imposition of a sentence. *State* v. *Savastano,* 112 R. I. 702, 315 A.2d 66

---

[1] He was in limbo because the time spent awaiting trial or sentence could not be credited towards any future parole.

(1974). Such a query, however, presupposes that there is no other reason to restrict the accused to the jailhouse and the jailyard.

Here, it is obvious that Skirvin's status changed on September 15, 1971 from an awaiting trial or sentencing status to that of one serving a four-year prison sentence. Even if he could have made bail at any time subsequent to that date, he could not have left the prison. The trial justice's action was correct.

In what appears to be an effort to nullify the four-year breaking and entry sentence, Skirvin complains that he was not notified that the issue of his breach of the deferred sentence agreement was to be considered contemporaneously with his petition for bail. Admittedly, due process required notice of the charge which constituted the violation. *State* v. *Bettencourt,* 112 R. I. 706, 315 A.2d 53 (1974). However, in the unique circumstances of this case we can see no prejudice to him.

In *Taglianetti* v. *Fontaine,* 105 R. I. 596, 253 A.2d 609 (1969), we ruled that, when bail is sought in a capital case and the prosecution opposes such action, it must demonstrate the presence of the constitutional exception that "proof of guilt is evident or the presumption great." The trial justice, when apprised of Skirvin's concern as to the lack of notice, pointed out that if the court was satisfied that the state had succeeded in opposing his petition, the same evidence used to support such opposition would also support the state's contention that Skirvin's bar behavior justified a finding that he had indeed violated the terms of his deferred sentence. Conversely, if the state failed to sustain its burden, he would refuse to "violate" Skirvin.

A revocation hearing is an informal proceeding at which the technical rules of evidence do not apply. The sole issue is whether the criminal has breached a condition of his probation or his deferred sentence. Proof beyond a

reasonable doubt is not required. All that is needed is evidence which "reasonably satisfies" the trial justice that a violation has occurred. *State* v. *Bettencourt, supra*.

While it is difficult to postulate a rule that can be described as a definitive expression of the phrases "proof evident" or "presumption great," we look to *State* v. *Konigsberg*, 33 N. J. 367, 164 A.2d 740 (1960), where the court declared that bail should be denied when the circumstances indicate a "fair likelihood" that a defendant is in danger that a jury could return a guilty verdict on the capital offense set forth in the indictment.

It is our belief that the violation-hearing standard of "reasonable satisfaction" is for all intents and purposes synonymous with the bail-hearing standard of "fair likelihood." We would also point out that there was nothing informal in the manner in which the bail hearing was conducted. The rules of evidence were scrupulously observed. This would not necessarily be true if a separate violation hearing had been held.

There was abundant evidence to deny bail and at the same time require the imposition of the sentence originally deferred in 1968. We perceive no prejudice to Skirvin from the state's failure to specifically notify him that it was going to use the bail hearing as its vehicle to have him adjudged as a violator.

In dismissing this appeal we would point out that the record before us gives no indication as to whether Skirvin in fact has received credit for his awaiting trial status during the period of June 21 to September 14. Upon remand, the trial justice can examine this facet of the case and, if necessary, issue the necessary order which will reduce the manslaughter sentence by this particular period of time.

The defendant's appeal is denied and dismissed and the

case is remanded to the Superior Court for further proceedings as may be necessary.

Mr. Chief Justice Roberts did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *R. Raymond Greco,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *John P. Toscano,* Asst. Public Defender, for defendant.