[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the court is an appeal from the Zoning Board of Review of the Town of Barrington (the "Board"), which denied the petitioner's request for a variance. Jurisdiction is pursuant to R.I.G.L. 1956 (1988 Reenactment) § 45-24-20.
Robert Baldwin (the "petitioner") owns the subject property described as Lot 30 of Assessor's Plat 15, located at 1 Kyle Street in Barrington, Rhode Island. Said property is presently zoned R-25, a residential district requiring a minimum lot area of twenty-five thousand (25,000) square feet and a minimum front yard depth of thirty feet (30) for a single family dwelling. (Section 8-3, Barrington Zoning Ordinance). Lot 30 consists of approximately thirteen thousand five hundred and fifteen (13,515) square feet.
Some "historical" background regarding Lot 30 is relevant to the instant appeal. On July 14, 1986, Pawtuxet Building Contractors. Inc. ("Pawtuxet Builders"), the petitioner's predecessor in title, purchased Lot 30 as well as the contiguous Lot 31, also of Assessor's Plat 15 in Barrington, Rhode Island, for the purpose of constructing a single-family dwelling on each lot. On August 25, 1986, the Barrington Town Council amended the zoning map causing lots 30 and 31 to be designated as R-25, under which both lots were rendered nonconforming parcels. On October 15, 1987, the Board granted then applicant Pawtuxet Builders an extension of its special exception relief pursuant to Section 4-4 of the Barrington Zoning Ordinance to construct two (2) single family homes with insufficient frontage within fifty (50) feet of water and without combining lots 30 and 31 on Assessor's Plat 15 in the R-25 district. (Exhibit C). Such relief per the decision of the Board was to expire on October 15, 1988.
Although Pawtuxet Builders timely began construction of a home on Lot 31, the project stopped at approximately mid-construction in October of 1988. (Lot 30 remained at all times an undeveloped parcel). Some time after October 14, 1988, Pawtuxet Builders became insolvent and its mortgagee, People's Bank, took title to both Lots 30 and 31 via foreclosure. Then on October 5, 1989, the petitioner at bar took title to Lot 30 by foreclosure deed from People's Savings Bank. The petitioner, who had not been paid for materials he had supplied to Pawtuxet Builders, had placed a mechanic's lien on Lot 30 for which he took title in consideration of removal of that lien.
On August 14, 1989, the petitioner filed an "Application for Exception or Variance" to build a twenty-four (24) foot by sixty (60) foot (Exhibit A[1], Tr. at 1), single family home on Lot 30. A public hearing was held on October 18, 1990 at which time the matter was continued to November 15, 1990. At the hearings, the Board heard testimony from objectors including Karen Nastelle, a neighbor; Sarah McLeod of the Barrington Land Conservation trust; and Susan Adamowicz, Chairperson of the Barrington Conservation Commission. Ms. Nastelle essentially testified that the area was currently experiencing a drainage problem which would be exacerbated by the petitioner's proposed construction. (Exhibit 1, Tr. at 4-6). Sarah McLeod expressed her concern that run-off and pollutants from the property would have a detrimental effect on the nearby Hundred Acre Cove. (Exhibit B[2], Tr. at 10). Additionally, Susan Adamovich, objecting to the petitioner's plans, cited the severe problem in water quality being experienced by Hundred Acre Cove as well as the drainage problem on Kyle Street, both of which she believed the petitioner's construction/land use would intensify. (Exhibit B, Tr. at 14).
In support of his application before the Board, the petitioner presented at the hearings his CRMC "assent" (Exhibit A; Tr. at 8-9 and Exhibit B, Tr. at 1) approving the project and Jay Flanagan, a qualified real estate expert, whose report indicated that the highest and best use of Lot 30 would be a single family house which would be appropriate for the subject area, a subdivision of single family house lots. (Exhibit B, Tr. at 2 and Exhibit F).
On November 15, 1990, after considering all the evidence, the Board voted to deny the petitioner's application for a deviation from the front yard setback of thirty (30) feet to allow him a fifteen (15) foot setback (Exhibit A, Tr. at 1) as well as to place his house on an undersize lot, not combining lots. (Exhibit D., "Application for Exception or Variation . . ."). As reasons for its denial, the Board cited ". . . the public convenience and welfare will not be substantially served and the appropriate use of the neighboring property would be substantially injured." (Board "Minutes of Meeting ", November 15, 1990 at 7). Thereafter, the petitioner timely filed the instant appeal.
The Superior Court review of a zoning board decision is controlled by Rhode Island General Laws 1956 (1988 Reenactment) §45-24-20(d), which provides in pertinent part as follows:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing a zoning board decision, the Superior Court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record."Apostolou v. Genovesi, 388 A.2d 821, 825 (R.I. 1978). This requisite "substantial evidence" has been further defined ". . . as more than a scintilla but less than a preponderance." Id. at 824; ". . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 826.
The petitioner at bar argues the following. First, the Board's denial of his application for a Viti Variance (or deviation) constitutes reversible error as said decision results in "more than a mere inconvenience" to the plaintiff. Secondly, petitioner argues that assuming arguendo that the two undersize lots were merged by operation of law, the petitioner's application also encompasses a request for a true variance, in whole or in part, and thus the Board's denial of same results in an "unnecessary hardship" for the plaintiff. Further, relying onRedman v. Zoning and Platting Board of Review of the Town ofNarragansett, 491 A.2d 998 (R.I. 1985), the petitioner argues that even if merger provisions applied, the Pawtuxet Builders' incomplete construction of a dwelling on Lot 31 constitutes a legal nonconforming use which pursuant to Zoning Ordinance "Amendment 87-10" would preclude a merger of Lots 30 and 31.
Alternatively, the Board argues that the petitioner accepted title to Lot 30 in violation of Barrington Zoning Ordinance Sections 9-1 and 9-3, which essentially require the merger of substandard contiguous lots in the same ownership, this "same ownership" occurring when People's Bank took title Lots 30 and 31. Furthermore, the Board argues that the ". . . half-built, never-occupied dwelling shell," on Lot 31 (Defendant Board's Brief at 5) a project that was abandoned, does not qualify as a pre-existing nonconforming use and that consequently, contiguous Lot 30 was illegally conveyed in violation of Section 9-4 of the Barrington Zoning Ordinance.
At the center of this controversy, physically as well as legally, is the incomplete dwelling house located on Lot 30. R.I.G.L. 1956 (1988 Reenactment) § 45-24-10, entitled Pre-existing uses saved — ," provides:
 45-24-10. Pre-existing uses saved. — No ordinance enacted under the authority of this chapter shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which the building or improvement is lawfully devoted at the time of the enactment of the ordinance.
The August 25, 1986 amendment of the Barrington Zoning Ordinance theoretically merged contiguous lots 30 and 31 which was at that time in "the same ownership" of Pawtuxet Builders and therefore subject to the application of Section 9-3 of the Barrington Ordinance. Section 9-3 in pertinent part provider as follows:
 9-3 Combining Lots in the Same Ownership
 Where land adjacent to a substandard original lot is owned by the owner of said substandard original lot or his or its affiliate, the exemption of Subsection 9-1 shall not apply and said substandard original lot shall be combined with said adjacent land to establish a lot or parcel having at least the required minimum dimensions and area set forth in Section 8 for the application zone. If all such adjacent land so combined is not sufficient to permit the enlargement of said lot to confirming area and dimensions, then the largest lot or parcel which the adjoining common ownership will permit shall be established. By way of example, if all such adjacent land so combined is sufficient to meet the the applicable area and dimensional requirements for at least one lot but not for two or more fully conforming lots, then all such lots shall be combined to create a signal lot only.
As Pawtuxet Builders had bought Lots 30 and 31 prior to the enactment of the merger provision of the Barrington Zoning Ordinance, the Board pursuant to its powers to grant a "special exception" (Section 9-7) to the requirements of Section 9 granted permission to then petitioner Pawtuxet Builders to construct single family homes on both lots 30 and 31. With respect to its earlier grant of the special exception relief the Board noted that
. . . it had granted the 1987 application because of the serious problem of the applicant. The applicant had incurred some real costs prior to the adoption of the merger ordinance and under those unique circumstances it was inequitable to merge . . . . that there were not the same equitable basis for granting this application, as for the previous application."
(Board's November 15, 1990 "Minutes of Meeting" at 7). Permission for this construction was further extended in October, 1976 with an expiration of October, 1988. Thus, the incomplete dwelling structure erected on Lot 31, as a result of the Board's above-described actions, became a legal non-conforming use.
Our Supreme Court has described a nonconforming use as an alienable property interest and one for which a ". . . mere change of ownership does not destroy the nonconforming use."South County Sand Gravel Co. v. Town of Charlestown,446 A.2d 1045, 1046 (R.I. 1982) (Quoting Town of Coventry v. Glickman,429 R.I. 440 (R.I. 1981). Elsewhere in Town of East Greenwich v.Day, 118 R.I. 955, 375 A.2d 953, 956 (1977), our Supreme Court spoke of ". . . the vested right to a nonconforming use." What does destroy the nonconforming use is abandonment of same. InA.T. CO., Inc. v. Zoning Board of Review of the Town of NorthSmithfield, 113 R.I. 443, 322 A.2d 297 (1974), the court specifically defined abandonment as ". . . an intention to relinquish and permanently cease to exercise a known right to devote the property to a permitted nonconforming use, evidenced by an overt act or a failure to act. . . ." Id. (Quoting 2 Rathkopf, The Law of Zoning and Planning, Ch. 61 (3d ed. 1972).
However, case law has consistently reaffirmed that ". . . mere discontinuance of a nonconforming use for a period of time does not constitute abandonment of that use . . ." but "[t]here must also exist an intent to abandon." Town of Coventry v.Glickman, 429 A.2d at 441. A nonconforming use of land for a bakery at which no baking took place for eleven years did not constitute an abandonment of an existing legal nonconforming use in Richards v. Zoning Board of Review, 100 R.I. 212,213 A.2d 814, 817 (1965). More recently, a nonconforming building which was destroyed by a fire leaving all five units within the building uninhabitable and after which the owner, in violation of the zoning ordinance, failed to request a permit to rebuild same for more than twelve months after the fire had occurred did not evidence abandonment of a project. M.B.T. Construction Corp. v.Edwards, 528 A.2d 336 (R.I. 1987). Furthermore, in M.B.T.Construction Corp., supra, the applicable Newport Zoning Ordinance section mandating that a building constituting a nonconforming use shall not be rebuilt unless reconstruction of such use is started within twelve months of the loss, and such reconstruction must be pursued diligently until completion and must be completed within twenty-four months, was held "invalid" as enacted in contravention of § 45-24-10 concerning "pre existing uses saved." Earlier, in Town of East Greenwich v.Day, 375 A.2d at 955 (Quoting A.T. Co. Inc., 322 A.2d at 296), the court noted that a zoning ordinance provision providing that a legal nonconforming use that is discontinued for more than two years can't be renewed was an attempt by the local legislature to abridge in the ordinance a rule granted by the enabling act, §45-24-20(d). Nevertheless, Sections 7-4 of the Barrington Zoning Ordinance in pertinent part provides that
. . . a lawful nonconforming use will be presumed to have been abandoned in any of the following circumstances: . . . c. Failure to apply for or lapse of any permit. . . ." d. Failure to maintain the site, building or structure in habitable, usable or safe condition or failure to protect said building or structure from natural elements.
 E. Voluntary non-use of a building or structure or right of use in excess of one year.
This court is mindful that the petitioner's predecessor in title, Pawtuxet Builders, had been specifically granted relief from the application of the merger provision of Section 9-3 and had built on Lot 31 which this court finds subsequently qualified as a legal nonconforming use. Although People's Bank subsequently foreclosed on their security interest in Lots 30 and 31, it held both lots as security subject to the petitioner's mechanic's lien encumbering Lot 30. Lot 31 remained a legal nonconforming use which had been permitted and created after the Barrington Zoning Ordinance merger provision, Sec. 9-3, took effect. The incomplete structure's presence on Lot 31 at all times and People's Bank's deeding individual Lot 30 to the petitioner further evidence the bank's intent not to abandon the legal nonconforming use status previously conferred on Lot 31 by the Barrington Board after the merger provision was enacted and while contiguous Lots 30 and 31 were in the same ownership, that of Pawtuxet Builders. Thus, the Zoning Board in 1976 and again in 1987 had afforded to Lot 30 relief from merger with Lot 31. Consequently, the argument that once Lots 30 and 31 were in the same ownership of People's Bank (which held them subject to petitioner Baldwin's mechanic's lien) they "merged," is therefore moot.
This court finds that Lot 30 qualified as a legal nonconforming use that was created via the Board's earlier grant of relief from merger to Pawtuxet Builders, the petitioner's predecessor in title. Furthermore, this court is not satisfied that the Board had before it sufficient evidence of abandonment with regard to this use. When Lots 30 and 31 were in "the same ownership" of Pawtuxet Builder, at which time the merger occurred by operation of law, the board chose to grant to Pawtuxet Builders special exception relief from merger. Whereas Brum v.Conley, 672 A.2d 1332 (R.I. 1990) and Redman, 491 A.2d at 998, concern the merger of contiguous lots to conform to minimum zoning requirements, the case at bar concerns a continuation of relief afforded to landowners after merger has already once occurred.
This court further finds that the petitioner has provided the requisite, probative evidence that the enforcement of Sections 8-3A, 8-3F, 9-1, and 9-3 of the Barrington Zoning Ordinance (Plaintiff's Exhibit D) will amount ". . . to something more than a mere inconvenience." Rozes v. Smith, 120 R.I. 515, 519,388 A.2d 816 (1978) — namely his not being able to build a single family home on the residentially -zoned Lot 30. In Felicio v.Fleury, 557 A.2d 480 (R.I. 1989) the Supreme Court similarly upheld relief in the from of a deviation granted to a petitioner requesting relief from minimum lot-size and frontage restrictions to construct a single family home on a residential lot finding that the petitioner's inability to build constituted the requisite ". . . adverse impact amounting to more than a mere inconvenience." Id. at 482.
Finally, in denying relief to the petitioner, the Board cited as reasons ". . . the public convenience and welfare will not be substantially served and the appropriate use of the neighboring property would be substantially injured." (Board's "Minutes of Meeting,' November 15, 1990 at 7). This court is satisfied that petitioner Baldwin presented to the Board the requisite, probative evidence rebutting the above. The Board had before it the CRMC "Assent," approving his development of the site and which providing "Additional Stipulations" specifying the manner in which the applicant was to develop the property so as to protect the water quality and prevent drainage problems. (Exhibit A, Tr. at 8-9, Exhibit B, Tr. at 1). Furthermore, with respect to the petitioner's proposed use of property in this particular area, the Board had before it both the testimony and the report from real estate expert Jay Flanagan, who stated that the proposed use would be in conformity with the prevailing land uses in that residential area and would tend to increase values in the subject neighborhood. (Exhibit B, Tr. at 2 and Exhibit F).
After review, this court finds that the decision of the Board is not supported by reliable, probative, and substantial evidence of the whole record and is clearly erroneous. For the reasons herein above set out, the November 1990 decision of the Zoning Board of Review of the Town of Barrington is hereby reversed.
Counsel shall prepare the appropriate order for entry.
[1] Exhibit A is the transcript of the October meeting of the Board.
[2] Exhibit B is the transcript of the November meeting of the Board.