DECISION
This is an appeal from a decision of the Zoning Board of Review for the Town of Portsmouth (Board). Plaintiffs are seeking a reversal of the Board's October 20, 1994 decision to uphold the Portsmouth Zoning Enforcement Officer's denial of their request for a building permit and the Board's decision to deny their petition for a special use permit. Jurisdiction in this Court is pursuant to G.L. § 45-24-69.
 Facts/Travel
Robert and Barbara Vivieros (plaintiffs) own the subject property described as Lot 12A of Assessor's Map 18, located at 19 Mello Terrace, Portsmouth, Rhode Island. The property is presently zoned R-20. (Town of Portsmouth Zoning Ordinance, Art. V § (A)). The plaintiffs purchased the property in 1966. (Audiotape of 10/20/94 hearing). In 1966, the property housed a 45' X 10' mobile home with a 40' X 24' addition.[1] Id. The mobile home, but not the addition, sat on a 70' X 14' cement slab. Id. Although it is referred to as a "foundation," only a portion of the slab served as a base upon which the mobile home rested.[2] The addition rested on separate footing. (Audiotape of 10/20/94 hearing). In 1975, plaintiffs replaced the mobile home and addition with a mobile home measuring 45' X 12', which rests on a slightly larger portion of the so-called foundation.Id.
At no time, material hereto, was a mobile home a permitted use of the subject property.[3] Although the record is silent as to the date when the property first housed a mobile home, it appears undisputed that as of 1966 when plaintiffs purchased the property, the mobile home and addition situated thereon was a legal nonconforming use. In 1975, when the plaintiffs replaced the mobile home and addition with the existing structure, the applicable provisions of the ordinance permitted adding to and enlarging a structure devoted to a nonconforming use without additional zoning relief.[4] Accordingly, the replacement of the 45' X 10' mobile home in 1975 was lawful and the property continued as a legal nonconforming use. By 1994 the ordinance had been reenacted, the applicable provisions of which prohibit expanding and/or enlarging a nonconforming use of land without first obtaining a special use permit.[5]
In 1994, plaintiffs applied to the Zoning Enforcement Officer for a building permit to replace the 45' X 12' mobile home with a 70' X 14' mobile home. Id. On September 14, 1994, the plaintiffs' request was denied. (See Application of Appeal to Town of Portsmouth Board of Review). On September 15, 1994, plaintiffs appealed the decision of the Zoning Enforcement Officer and, at the same time, filed a petition seeking a special use permit, formerly known as a special exception. (See Application of Appeal to Town of Portsmouth Board of Review and Petition to Town of Portsmouth Board of Review for a special exception). In a letter attached to the petition, the plaintiffs state that they are seeking to replace the existing unit because "it is now too old to keep repairing and too small for a young family; and the only people who want to rent this unit now are college kids." (See
Letter to Board dated 9/15/94). The letter further provides that the plaintiffs wish to replace the existing unit with a "unit big enough for a family of 2 or 3 people" in order to "keep the neighborhood a family area." Id.
At a properly advertised hearing held on October 20, 1994, plaintiff Barbara Vivieros testified in support of the appeal. (Audiotape of 10/20/94 hearing). She testified that the 40' X 24' addition, which sat on the subject property from 1966 through 1975, did not sit on the so-called cement foundation, but had its own footing which remains on the property. Id. Mrs. Vivieros stated that in 1975, she and her husband could not afford to replace the 45' X 10' mobile home and 40' X 24' addition, with a mobile home larger than 45' X 12'. Id. In addition, she stated that D.E.M. has approved the proposed 70' X 14' mobile home. Id.
The Zoning Enforcement Officer's denial of the request for a building permit was based on his holding that the use of the property for a mobile home larger than 45' X 12' had been abandoned. At the hearing, George Medieros, the Zoning Enforcement Officer, testified that use of the property for a 70' X 14' mobile home, which he stated is much larger than the mobile home which presently sits on the property, had been abandoned for more than one year. (Audiotape of 10/20/94 hearing). Mr. Medieros explained the law of abandonment as set forth under the new Zoning Enabling Act and testified the plaintiffs failed to meet the burden of proof under § 45-24-39 (C).[6] Id.
After hearing the testimony of Mrs. Vivieros and Mr. Medieros, the Board voted unanimously to uphold Mr. Medieros' decision as the Zoning Enforcement Officer. Id. In support of the decision, the Board found that use of a mobile home with dimensions greater than 45' X 12' had been abandoned. Id.
The Board then continued to hear testimony with respect to plaintiffs' petition for a special use permit. Once again, the Board heard testimony from plaintiff Barbara Vivieros. She testified that due to the size of the mobile home which presently sits on the subject property, their rental clientele has been limited to college students. Mrs. Vivieros stated they are seeking to have a larger mobile home in order to attract families as tenants. (Audiotape of 10/20/94 hearing).
Two abutters testified in opposition to the petition for a special use permit. Paul Salesi and Harry McCarthy both testified that they object to a larger mobile home at the site, as the existing and proposed mobile home is not compatible with the surrounding neighborhood which consists of single-family homes.Id. During discussions, members of the Board noted the proposed mobile home is "considerably larger" than the mobile home which currently sits on the property. Id.
Following the hearing, the Board voted unanimously to deny plaintiffs' request for a special use permit. Id. The plaintiffs filed a timely appeal to this Court.
 Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 § 45-24-69 (D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this contest means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n, Inc. v. George, 648 A.2d 370, 371 (RI. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Abandonment
Article VI, § B(1) of the ordinance permits the continuation of a preexisting, legal nonconforming use of land. In reliance on this provision, the plaintiffs apparently contend that they have a vested right to replace the existing 45' X 12' mobile home with the proposed 70' X 14' mobile home because the proposed construction equals the dimensions of the preexisting cement slab. The Board, applying the standard of proof found in §45-24-39 (C) of the enabling act, found that the use of the property to house a mobile home with dimensions greater than 45' X 12' had been abandoned. In support of their appeal, the plaintiffs argue that they never abandoned the right to continue the nonconforming use to which the property was dedicated prior to 1975. In addition, the plaintiffs maintain that the issue of abandonment with respect to their claim of right to install a 70' X 14' mobile home, relates back to 1975 when the original mobile home was removed and, thus, they dispute the application of the new enabling act on the issue of abandonment.[7]
Section 45-24-39 (C) of the enabling act provides:
 "if any nonconforming use is halted for a period of one year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent to abandon the use."[8]
Under the traditional law of abandonment, which applied prior to the enactment of the current enabling act, the burden of proof was on the party asserting abandonment and that burden never shifted to the property owner. Town of Coventry v. Glickman,429 A.2d 440 (R.I. 1981); Washington Arcade v. Zoning Board ofReview, 528 A.2d 736 (R.I. 1987). Under both the enabling act and prior case law, abandonment has been defined as an intention to relinquish and permanently cease to exercise a known right to devote the property to a permitted nonconforming use evidenced by an overt act or failure to act. See R.I. Gen. Laws § 45-24-39 (C);A.T. G., Inc., v. Zoning Bd., N. Smithfield, 113 R.I. 443,322 A.2d 297 (1974). Accordingly, the property owner's intent is determinative on the issue of abandonment.
However, a review of the record reveals that the issue of abandonment is not determinative of the instant appeal. Plaintiffs contend that the continued presence of the so-called foundation entitles them to construct a new mobile home with dimensions equal to those of the cement slab. This contention is without merit. The slab was a foundation only to the extent that it ever served as a base upon which a structure rested. Only a portion of the slab was ever used by plaintiffs as a foundation or base for their mobile homes. In fact, the existing mobile home rests on a larger portion of the slab than did their original mobile home.
Additionally, there is no contention that plaintiffs abandoned the nonconforming use. The undisputed facts reveal that since 1966, use of the property to house a mobile home has been uninterrupted except in 1975 when the plaintiffs replaced the 45' X 10' mobile home and addition with the 45' X 12' mobile home that currently sits on the property. The enabling act defines "use" of property as "[t]he purpose or activity for which land or buildings are designed, arranged or intended, or for which land or buildings are occupied or maintained (emphasis added)." The act distinguishes between developments that are nonconforming by dimension from those nonconforming by use.[9] Use of the subject property is nonconforming because it houses a mobile home, not because it is nonconforming by dimension. There has been no suggestion that the property ever failed to meet the dimensional regulations of the applicable ordinance, such that the development is or was rendered nonconforming by dimension.
It appears that the determination of whether the proposed structure would constitute an expansion or enlargement of the nonconforming use rests on a comparison of the existing structure to the proposed replacement. However, the Court finds that the proposed construction constitutes an enlargement or expansion of the nonconforming use when compared to either of its predecessors. See 1 Anderson, American Law of Zoning, § 6.46 at 627-28 (nonconforming use is extended when an old building is torn down and replaced with a larger building or one that is more modern than the old). Even though the Board reached this conclusion after having decided that there had been an abandonment, the Board properly considered the proposed mobile home as an extension of a nonconforming use. See Mesolella v.City of Providence, 439 A.2d 1370, 1373 (R.I. 1982) (court may sustain a correct judgment even if it was reached through faulty reasoning or mistake of law).
Although in certain instances the relief sought might be of such proportions as to amount to a change of use, no such contention has been raised herein. See Santoro v. Zoning Bd. ofReview of Town of Warren, 93 R.I. 68, 171 A.2d 75 (1961). In theSantoro case, the petitioner sought to replace an existing building, used as a combination grocery store and gasoline station, which uses were nonconforming, with a new building. The petitioner also sought to add to the number of gasoline pumps on the property. The applicable ordinance in Santoro prohibited the change of a nonconforming use unless changed to a conforming use. However, unlike the ordinance in the instant matter, it was silent as to the extension or enlargement of a nonconforming use, and permitted such modifications with certain limitations. The Court held that resolution of the issue of whether the proposed alterations constituted a change of use or merely an extension or expansion of an existing nonconforming use, depends on the facts of each case and upon the degree of the proposed modification.
In so ruling, the Court addressed the question of extension and/or expansion of a nonconforming use, and to that extent, the decision provides guidance with respect to the issues presented herein. Based upon the holding in Santoro, it is clear that, at the very least, the mere replacement of a structure dedicated to a nonconforming use constitutes an extension of the nonconformity regardless of the proposed dimensions. In Santoro, the proposed building was of identical dimensions as the existing structure and, as here, the replacement was voluntary, i.e., it was not necessitated by an act of God. The Court upheld the Board's decision that the proposed replacement of the existing structure was of such proportions that it constituted not only an extension, but a change of use and, as such, was prohibited.
In addition, it is noteworthy that the purpose of expressly limiting the right of an owner of a structure dedicated to a nonconforming use to make structural alterations thereto and extend the area of the existing use is to eventually eliminate the nonconforming use. See 101A C.J.S. Zoning Land Planning §§ 64, 171. Alterations and/or extensions are recognized as prolonging the life of the existing nonconforming use and, therefore, are generally permitted, if at all, under limited circumstances. Id. There is no question that the proposed mobile home, which is more modern than its predecessors, would prolong the nonconforming use of the subject property. Accordingly, whether or not the proposed mobile home constitutes an enlargement of the nonconforming use, it is clearly an extension and/or expansion of such use prohibited under the ordinance without a special use permit.
 Special Use Permit
As noted above, pursuant to Article VI, § B(1), the right to continue a nonconforming use does not include a right to extend or enlarge it. Accordingly, the ordinance limits what may be done as of right by the owner of land enjoying a nonconforming use. However, when the proscribed conditions of Article VI, § C(1) are met, that section authorizes the Board under Article VII, § A(4) to grant by special use permit the extension of a building.[10]
The power of a zoning board of review to grant a special use permit is limited by the provisions of the ordinance. Dean v.Zoning Board of Warwick, 120 R.I. 825, 829, 390 A.2d 382 (1978). The rules and standards governing the exercise of a board's authority to grant a special use permit are "conditions precedent which must be met" before the zoning board is authorized to grant the permit. Guiberson v. Roman Catholic Bishop, 112 R.I. 252, 259, 308 A.2d 503 (1973). Moreover, it is well-settled that the applicant has the burden of presenting competent evidence to establish entitlement to relief under the conditions of the ordinance for a special use permit. Hugas Corp. v. Veader,456 A.2d 765; Toohey v. Kilday, 415 A.2d 732 (R.I. 1980). Where the conditions and requirements are satisfied, it is an abuse of discretion to deny the requested special use permit. Salve Reginav. Zoning Board of Review, 594 A.2d 878 (R.I. 1991).
In the instant matter, the standards which govern the exercise of the Board's authority to grant a special use permit are found in Article VII, § A(4) of the ordinance, which provides:
 "(a) The desired use will not be detrimental to the surrounding area;
 (b) It will be compatible with neighboring land uses.
 (c) It will not create a nuisance or a hazard in the neighborhood.
 (d) Adequate protection is afforded to the surrounding property by the use of open space and planting;
 (e) Safe vehicular access and adequate parking are provided;
 (f) Control of noise, smoke, odors, lighting and any other objectionable feature is provided;
 (g) Solar rights of the abutters is provided for;
 (h) The proposed special use will be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the Town of Portsmouth; and
 (i) The health, safety and welfare of the community is protected."[11]
The Board considered these factors and voted unanimously to deny the plaintiffs' request for a special use permit. In so holding, the Board found that the subject property is surrounded by "traditional houses" and concluded that the intention of the zoning ordinance was to limit "trailers to trailer parks." (See
Decision of the Town of Portsmouth Zoning Board). The Board further held that the desired use "will be detrimental to the surrounding area and will not be compatible with neighboring land uses." Id.
The standards set forth in Article VII, § A(4) raise questions of fact to be determined by the Board. The only evidence before the Board with respect to the factors relevant to plaintiffs' petition for a special use permit was the testimony of Mrs. Vivieros that the proposed 70' X 14' mobile home would "keep the neighborhood a family area" and the testimony of the abutting property owners that the proposed mobile home is incompatible with the surrounding neighborhood. However, it is generally accepted that the alimony of neighbors not shown to be experts is without probative force. Piccerelli v. Zoning Board ofReview of Barrington, 107 R.I. 221, 266 A.2d 249 (1970). With respect to the Board's finding that the proposed use will be incompatible with neighboring land uses, the Board had before it the application for appeal and the petition for a special use permit indicating that the property is located in a R-20 zone which, pursuant to the ordinance, is intended for the development of residential dwellings. (Town of Portsmouth Zoning Ordinance, Art. III, § B(2)). More importantly, the plaintiffs failed to present any competent evidence with respect to the remaining factors in Article VII, § A(4), the existence of which are a prerequisite to granting the requested relief.
Furthermore, with regard to the intent or purposes of the ordinance, it is clear that the expansion of a nonconforming use is disfavored. Although the ordinance does not expressly state a policy to restrict and eventually eliminate nonconforming uses,[12] the inclusion of provisions limiting the change, expansion, alteration, abandonment and restoration of nonconforming uses, clearly reflect a purpose to limit and eventually rid the town of nonconforming uses.
After a review of the entire record, the Court concludes that the plaintiffs failed to satisfy their burden for a special use permit under the Portsmouth Ordinance. Accordingly, the Court finds that the Board did not abuse its discretion in denying the request. In addition, the Court finds that substantial rights of the plaintiffs have not been prejudiced by the Board's decision. Therefore, the Board's October 20, 1994 decision is hereby upheld.
Counsel shall submit the appropriate judgment for entry.
[1] The Portsmouth Zoning Ordinance defines a "mobile home" as "[a] transportable, single family dwelling unit built on a chassis suitable for year round occupancy and containing the same water supply, waste disposal and electrical conveniences as immobile housing." Article II. In contrast, the Ordinance provides the following shall be considered a trailer:
"(1) Travel trailer: A vehicular portable structure built on a chassis, designed as a temporary dwelling for travel, recreation and vacation, having body width not exceeding 8 feet and a body length not exceeding 32 feet.
(2) Pick-up coach: A structure to be mounted on a truck chassis for use as a temporary dwelling for travel, recreation and vacation.
(3) Motor home: A portable temporary dwelling to be used for travel, recreation and vacation, constructed as an integral part of a self-propelled vehicle.
(4) Camping trailer: A folding structure mounted on wheels and designed for travel, recreation and vacation use." Id.
Throughout the October 20, 1994 hearing, the words "mobile home" and "trailer" were used interchangeably. The parties do not raise this issue on appeal, however, the Court finds that the unit at issue in the instant matter falls within the clear and unambiguous definition in the Ordinance of a mobile home.
[2] A "foundation" is defined as "the natural or prepared ground or base on which some structure rests." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 560 (1989).
[3] On July 12, 1965, the Town of Portsmouth adopted the first Portsmouth Zoning Ordinance causing the property to be designated as a Residential District and prohibiting the use of "trailers" for human occupancy, except in licensed "trailer parks." (Town of Portsmouth Zoning Ordinance, Art. II, § 4, Art. II, § 1 (1965)). The 1965 Ordinance did not distinguish between mobile homes and trailers. Article V, § A(8), of the current Portsmouth Zoning Ordinance, effective July 1, 1994, prohibits, in an R-20 zone, the use of a "trailer or mobile home, except in a trailer or mobile home park."
[4] In 1975, Article III, § 1(B) of the ordinance, as amended, provided in pertinent part:
"A building or structure which is devoted to a non-conforming use lawfully existing at the time of the passage of this ordinance may be added to or enlarged provided that the front side of rear yards and the height of such enlarged building or structure must meet the Zoning requirements of the district which it is located."
[5] Article VI, § B(1) of the Ordinance provides:
"A non-conforming use of land lawfully existing at the time of the passage of this Ordinance may be continued provided thatsuch non-conforming use of land shall not in any way be expandedor enlarged, except as provided in this Section (emphasis added)."
Article VI, § C(1) provides:
"With Board of review approval as a special use permit, abuilding or structure which is devoted to a non-conforming use
lawfully existing at the time of the passage of this Ordinancemay be added to or enlarged provided that the front, side and rear yards, lot coverage, height of such enlarged building or structure and parking requirements meet the zoning requirements of the district in which it is located (emphasis added)."
[6] Section 45-24-39 (C) provides:
"A zoning ordinance may provide that, if a nonconforming use is abandoned, it may not be reestablished. Abandonment of a nonconforming use shall consist of some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use. However, if any nonconforming use is halted for a period of one year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use."
[7] In response to the plaintiffs' position on this issue, it is noteworthy that under Rhode Island law, the zoning enabling act and ordinance in effect at the time of the zoning board's decision controls. See Ocean Road Partners v. State,612 A.2d 1107, 1112 (R.I. 1992).
[8] Article VI, § B(3) of the Ordinance, complies with the mandates of § 45-24-39 (C).
[9] General Laws § 45-24-31 (49) provides, in pertinent part:
"(a) Nonconforming by use: a lawfully established use of land, building, or structure which is not a permitted use in that zoning district. A building or structure containing more dwelling units than are permitted by the use regulations of a zoning ordinance shall be nonconformity by use; or
(b) Nonconforming by dimension: a building, structure or parcel of land not in compliance with the dimensional regulations of the zoning ordinance. Dimensional regulations include all regulations of the zoning ordinance, other than those pertaining to the permitted uses. . . ."
[10] General Laws § 45-24-40 (A), entitled "Alteration of nonconforming development, authorizes cities and town to enact zoning ordinances permitting a nonconforming development to be altered under the following conditions:
"(1) The ordinance may establish a special-use permit, authorizing the alteration, which must be approved by the zoning board of review following the procedure established in this chapter and in the zoning ordinance; or
(2) The ordinance may allow the addition and enlargement, expansion, intensification, or change in use, of nonconforming development either by permit or by right and may distinguish between the foregoing actions by zoning districts."
[11] Article VII, § A of the Ordinance complies with the mandates of § 45-24-42.
[12] In contrast, Article I, § D of the Ordinance provides:
"Nothing contained in this Ordinance shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose to which such building or improvement or land is lawfully devoted at the time of enactment of this Ordinance."